**No. 24-720, 24-2826**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

**TRADER JOE'S COMPANY,**

*Plaintiff-Appellant,*

v.

**TRADER JOE'S UNITED**

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Central District of California
No. 2:23-cv-05664
The Honorable Hernán D. Vera

_____

**APPELLEE'S ANSWERING BRIEF**

_____

Sonya Z. Mehta
Siegel, Yee, Brunner & Mehta
475 14th Street, Suite 500
Oakland, CA 94612
510-839-1200
sonyamehta@siegelyee.com

*Attorneys for Appellee*
Trader Joe's United

Retu R. Singla
Seth Goldstein, Admission Pending
Goldstein & Singla, PLLC.
A Working People's Law Center
11 Broadway, Suite 605
New York, NY 10004
(646) 228-4729
rsingla@workingpeopleslaw.com
sgoldstein@workingpeopleslaw.com

*Attorneys for Appellee*
Trader Joe's United

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Trader Joe's United, certifies that it is a labor organization. It has no parent corporation and no stock, so no publicly held corporation owns more than ten percent of its stock.

_/s/ Retu R. Singla_
Retu Singla

**GOLDSTEIN & SINGLA, PLLC.**
A Working People's Law Center
11 Broadway, Suite 605
New York, NY 10004
(646) 228-4729
rsingla@workingpeopleslaw.com

Attorneys for Appellee
Trader Joe's United

ii

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... vi

INTRODUCTION ..................................................................................... 1

JURISDICTIONAL STATEMENT ................................................................ 3

STATUTORY AND REGULATORY AUTHORITIES ..................................... 3

STATEMENT OF ISSUES ........................................................................ 3

STATEMENT OF THE CASE ..................................................................... 4

I.    FACTUAL BACKGROUND .................................................................. 4

    A.    Trader Joe's two-year history of Union interference................. 4

        1.    Trader Joe's charged with violating the rights of organizing employees at Hadley store. ........................... 4

        2.    The Minneapolis store victory......................................... 6

        3.    The Oakland store victory. ............................................. 6

        4.    Unfair practices and stalled bargaining. ......................... 6

        5.    The retaliatory and chilling timing of this lawsuit. .......... 7

    B.    Despite notice of its frivolity, and drenched in ULPs, Trader Joe's filed this lawsuit; the District Court dismissed it entirely and without leave to amend. ................... 8

    C.    The District Court granted fees finding the claims exceptionally weak and improperly motivated....................... 10

SUMMARY OF THE ARGUMENT............................................................. 11

STANDARD OF REVIEW ........................................................... 12

ARGUMENT .............................................................................. 13

I.    THE UNION DID NOT USE TRADER JOE'S MARK, THUS IT DID NOT SELL TRADER JOE'S-BRANDED GOODS IN COMMERCE. ......................................................................... 13

II.   COURT WELL WITHIN ITS DISCRETION WHERE THE NORRIS-LAGUARDIA ACT DEPRIVED IT OF JURISDICTION TO PROVIDE THE REQUESTED INJUNCTIVE RELIEF. ................................................................ 15

    A.   This was a labor dispute under the NLA. .............................. 15

        1.   This case arose from an intense labor dispute. .............. 16

        2.   The ULPs and NLRB complaints showed this Complaint grew from a labor dispute. .......................... 19

        3.   Trader Joe's allegations of harm are conclusory. ........... 20

    B.   TJU selling goods is immaterial because there was no infringement. .................................................................. 21

III.   TRADER JOE'S FAILED TO ALLEGE SIMILARITY, RELATED GOODS, AND OTHER SLEEKCRAFT FACTORS. ......................... 22

    A.   The District Court rightly dismissed this case due to the implausibility of Appellant's allegations. ................................ 23

    B.   The Court properly considered the TJU website. .................... 25

    C.   *Sleekcraft* factor 1. Trader Joe's strong mark did not make its claim plausible. ................................................................. 27

iv

D. *Sleekcraft* factor 2. The campaign merchandise was not in proximity to groceries. .................................................. 27

    1. The Court applied the right standard and found *no* relation. ...................................................................... 27

    2. TJU's goods criticized Appellant's labor practices. ........ 30

E. *Sleekcraft* factor 3. There was no similarity. ........................... 31

F. *Sleekcraft* factor 4. No evidence of actual confusion .............. 33

G. *Sleekcraft* factor 5. TJU sells online, Trader Joe's in store. ...................................................................................... 34

H. *Sleekcraft* factor 6. The degree of care. .................................. 37

I. Remaining *Sleekcraft* factors. Evidence of confusion, intent to infringe, likelihood of expansion. ............................. 38

IV. THERE WAS NO DILUTION WHERE THERE WAS NO SIMILARITY AND ONLY UNCONTESTED, NOMINATIVE FAIR USE OF THE NAME. ....................................................................... 38

V. THE COURT WAS WELL WITHIN ITS DISCRETION TO REJECT ANY AMENDMENT TO THE COMPLAINT AS IT WOULD BE FUTILE. ...................................................................................... 42

VI. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION: TRADER JOE'S COMPLAINT IS "EXCEPTIONAL" IN ITS WEAK CLAIMS AND IMPROPER MOTIVATION. ...................................... 45

A. The case was exceptionally weak and without merit, like this appeal. ......................................................................... 46

B. The case was brought in bad faith. .......................................... 47

CONCLUSION .......................................................................................... 50

## TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*AMF Inc. v. Sleekcraft Boats,*
599 F.2d 341 (9th Cir. 1979) ........................................ 2, 22, 23, 27, 28

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................ 13

*Benavidez v. Cty. of San Diego,*
993 F.3d 1134 (9th Cir. 2021) ........................................................... 12

*Bliss Collection, LLC v. Latham Companies, LLC,*
82 F.4th 499 (6th Cir. 2023) ....................................................... 24, 46

*Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chicago,*
No. 94-C-3178, 1994 WL 516802 (N.D. Ill. Sept. 19, 1994) ............... 19

*Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chicago,*
856 F. Supp. 472 (N.D. Ill. 1994) ................................................. 14, 18

*Breaking Code Silence v. Papciak,*
No. 21-CV-00918-BAS-DEB, 2022
WL 4241733 (S.D. Cal. Sept. 13, 2022) ............................................. 48

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.,*
174 F.3d 1036 (9th Cir. 1999) ........................................................... 23

*Brotherhood of R. R. Trainmen v. New York Cent. R. Co.,*
246 F.2d 114 (6th Cir. 1957) .............................................................. 18

*Burlington Northern & Santa Fe Ry.,*
203 F.3d 703 (9th Cir. 2000) ............................................................. 18

*Burlington N. R.R. v. Bhd. of Maint. of Way Emps.,*
481 U.S. 429 (1987) ........................................................................... 15

*Cairns v. Franklin Mint Co.,*
292 F.3d 1139 (9th Cir. 2002) ........................................................... 40

*Caiz v. Roberts*,
   CV1509044RSWLAGRX, 2017 WL 830386
   (C.D. Cal. Mar. 2, 2017) ....................................................... 48

*Cintas Corp. v. Unite Here*,
   601 F. Supp. 2d 571 (S.D.N.Y., 2009) ........................................... 25, 36

*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*,
   269 F.3d 270 (3d Cir. 2001) .................................................... 33

*Columbia River Packers Ass'n v. Hinton*,
   315 U.S. 143 (1942) .......................................................... 17, 18

*Davis v. Am. Broad. Co.*,
   No. 22 CIV. 5944 (KPF), 2024 WL 1178014
   (S.D.N.Y. Mar. 19, 2024) ...................................................... 22

*Do v. First Fin. Sec., Inc.*,
   694 F. App'x 481 (9th Cir. 2017) ............................................... 42

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
   109 F.3d 1394 (9th Cir. 1997) ................................................. 36

*Fortune Dynamic, Inc. v.*
*Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F.3d 1025 (9th Cir. 2010) ........................................... 28, 29, 30, 37

*Gibson Guitar Corp. v. Viacom Int'l, Inc.*,
   No. CV 12-10870 DDP AJWX, 2013 WL 3779593
   (C.D. Cal. July 18, 2013) ...................................................... 48

*Greenlaw v. United States*,
   554 U.S. 237 (2008) ........................................................... 42

*Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 100*
*v. E. Air Lines Inc.*,
   826 F.2d 1141 (1st Cir. 1987) ................................................. 16, 17

*Jack Daniel's Properties, Inc. v. VIP Prod. LLC.*,
   599 U.S. 140 (2023) ........................................................... 24, 39

*Jada Toys, Inc. v. Mattel, Inc.*,
   518 F.3d 628 (9th Cir. 2008) .......................................................39, 40

*JL Beverage Co., LLC v. Jim Beam Brands Co.*,
   828 F.3d 1098 (9th Cir. 2016) ............................................................ 33

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)............................................................. 26

*Kirshner v. Uniden Corp. of Am.*,
   842 F.2d 1074 (9th Cir. 1988)............................................................ 44

*Knievel v. ESPN.*,
   393 F.3d 1068 (9th Cir. 2005) .......................................................... 25

*Lucky Stores, Inc. v. Int'l Bhd.*
*Of Teamsters Local Nos. 70, 78, 150, 409,*
   812 F. Supp. 162, 163 (N.D. Cal. 1992).................................................17

*Marriott Corp. v. Great America Services Trades Council, AFL-CIO*,
   552 F.2d 176 (7th Cir. 1977) ................................................................17

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003) ............................................................ 23

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
   40 F.4th 454 (6th Cir. 2022)............................................................. 46

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
   No. 20-3598, 2022 WL 3237492 (6th Cir. Aug. 10, 2022) ............... 46

*Medieval Times U.S.A., Inc. v. Medieval Times Performers United*,
   No. 2:22-cv-6050 (D.N.J. September 28, 2023) ................................ 8

*Network Automation v. Advanced Systems Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ........................................................... 35

*New Kids on the Block v. News Am. Pub., Inc.*,
   971 F.2d 302 (9th Cir. 1992) ...................................................... 14, 40

*New Negro Alliance v. Sanitary Grocery Co.*,
   303 U.S. 552 (1938) .......................................................................... 18

*New W. Corp. v. NYM Co. of California.*,
    595 F.2d 1194 (9th Cir. 1979) ............................................................ 27

*P & P Imports LLC v. Johnson Enterprises, LLC,*
    46 F.4th 953 (9th Cir. 2022) ............................................................. 26

*Park `N Fly, Inc. v. Dollar Park Fly, Inc.*,
    469 U.S. 189 (1985) ............................................................................ 30

*Partners for Health & Home, L.P. v. Yang*,
    488 B.R. 431 (C.D. Cal. 2012) ........................................................... 48

*Perfumebay.com Inc. v. eBay, Inc.*,
    506 F.3d 1165 (9th Cir. 2007) .................................................... 40, 47

*Pineda v. Skinner Servs.*, Inc.,
    22 F.4th 47 (1st Cir. 2021) ................................................................ 18

*Playboy Enterprises, Inc. v. Welles*,
    279 F.3d 796 (9th Cir. 2002) ........................................................... 40

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) .......................................................... 34

*Radiance Found., Inc. v. NAACP*,
    786 F.3d 316 (4th Cir. 2015) ............................................................. 41

*Rearden LLC v. Rearden Com., Inc.*,
    683 F.3d 1190 (9th Cir. 2012) .......................................................... 23

*Robinson v. Hunger Free America, Inc.*,
    No. 118CV00042LJOBAM, 2018
    WL 1305722 (E.D. Cal. Mar. 13, 2018) ............................................ 24

*Senco Prod., Inc. v. Int'l Union of Elec.,*
*Radio & Mach. Workers, AFL-CIO-CLC,*
    311 F. Supp. 590 (S.D. Ohio 1970) .............................................. 21, 32

*Silgan Containers LLC v. Int'l Ass'n of Machinists'*
*& Aerospace Workers, AFL-CIO,*
    No. 18-C-213, 2018 WL 5840766,
    (E.D. Wis. Nov. 8, 2018) ...................................................... 15, 16, 17

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
    839 F.3d 1179 (9th Cir. 2016) ........................................................ 13

*Think Rubix, LLC v. Be Woke. Vote*,
    No. 2:21-CV-00559-KJM-AC, 2022
    WL 1750969 (E.D. Cal. May 31, 2022)............................................22

*Thompson v. Runnels*,
    705 F.3d 1089 (9th Cir. 2013)........................................................42

*Tiedemann v. von Blanckensee,*
    72 F.4th 1001 (9th Cir. 2023)........................................................26

*Trader Joe's Co. v. Desertcart Trading FZE*,
    No. 23-CV-01148-CRB, 2023 WL 3959376
    (N.D. Cal. June 12, 2023)...............................................................49

*Trader Joe's Co. v. Hallatt,*
    835 F.3d 960 (9th Cir. 2016) .........................................................49

*Trader Joes Co. v. T-Shirt AT Fashion LLC,*
    No. CV2303010MWFRAOX,
    2023 WL 9420440 (C.D. Cal. Dec. 20, 2023)..............................48, 49

*United States v. Yates,*
    16 F.4th 256 (9th Cir. 2021).........................................................42

*V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC.,*
    946 F.3d 542 (9th Cir. 2019)......................................................... 13

*Zepeda v. U.S. I.N.S.,*
    753 F.2d 719 (9th Cir. 1983).......................................................... 13

*Zosma Ventures, Inc. v. Nazari*,
    No. CV121404RSWLFFMX, 2013
    WL 12129643 (C.D. Cal. Sept. 23, 2013) ......................................48

## Statutes

29 U.S.C. § 101 ............................................................................15

29 U.S.C. § 104 ..................................................................... 15, 21

29 U.S.C. § 104(e) ...................................................................  21

29 U.S.C. § 113 ...................................................................... 16

## Rules

FRCP 11 ................................................................................... 23

FRCP 12(b)(6) ........................................................... 12, 15, 17, 24

## Other Authorities

36 C.J.S. Federal Courts § 688 (2024) ........................................42

Rutter Group Prac. Guide Fed.,
Ninth Cir. Civ. App. Prac. Ch. 7-C, 7:81.1 .................................... 42

## INTRODUCTION

Appellant Trader Joe's Company appeals here to continue to "weaponize" trademark law and the federal courts in retaliation against its unionizing employees and Trader Joe's United (TJU), the union that represents them. 1-ER-15, Order Granting Motion to Dismiss. This appeal is not about TJU selling goods with infringing or diluting designs. The District Court held that the union did not violate the Lanham Act and that the designs were just not similar. It simply does not matter that the Union sold goods "in commerce," because the goods did not infringe or dilute.

The only product both parties sold was a tote bag. Trader Joe's design contained wine, fruit, and a cutting board, while the union's bore a fist with a box cutter in a circle or the word "union." 1-ER-11-12.



"[N]o reasonable consumer could plausibly be confused as to the source of the Union's labor-themed and visually distinct merchandise." 1-ER-3. Indeed, the Complaint was "dangerously close to the line of Rule 11,"

and failed to plausibly allege *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), factors. 1-ER-9.

The District Court held that Trader Joe's blurring claim failed because the marks were not similar, and the name was nominative fair use. 1-ER-22. Trader Joe's was "adamant" ... "that it is **not** suing Trader Joe's United over the Union's use of the name 'Trader Joe's." 1-ER-19.

> "Trader Joe's cannot have it both ways. They cannot state they take no issue with use of the name 'Trader Joe's' but yet rely on its use to evince the similarity of the marks." 1-ER-19.

The District Court held that the Norris LaGuardia Act (NLA) barred Appellant's request for an injunction.

> "This action [was] undoubtedly related to an existing labor dispute, and it strains credulity to believe that the present lawsuit ... would have been filed absent the ongoing organizing efforts that Trader Joe's employees have mounted (successfully) in multiple locations across the country." 1-ER-9.

Leave to amend would be "futile," because Trader Joe's could not satisfy *Sleekcraft* or show dilution, and this was a labor dispute. 1-ER-23. Trader Joe's improperly raised products unrelated to TJU's goods, and that it did not sell, in its unsuccessful Opposition to TJU's Motion for Attorney Fees. The District Court awarded attorneys' fees to the Union under the Lanham Act because of the exceptionally meritless nature of Trader Joe's claims and its improper motivation to chill union organizing. 1-ER-5.

2

Procedurally, the District Court may refer to publicly available material and information referenced in the Complaint. It may properly apply the law. In dismissing the Lanham Act claims, it disposed of the substantially congruent claims. 1-ER-15.

## JURISDICTIONAL STATEMENT

TJU agrees with Appellant's jurisdictional statement.

## STATUTORY AND REGULATORY AUTHORITIES

All relevant authorities appear in the Table of Authorities, above, or Appellant's Addendum. Docket 17.1, ADD-1-12.

## STATEMENT OF ISSUES

1) Whether the District Court erred in holding that the NLA barred injunctive relief where the Complaint related to an existing labor dispute.

2) Whether the District Court erred in dismissing the Complaint for failure to state a Lanham Act infringement or blurring claim where Trader Joe's failed to show any plausible likelihood of confusion about the source of the Union's goods, the marks were not similar, and the Union's use of "Trader Joe's" was nominative fair use.

3) Whether the District Court erred in denying leave to amend when to do so was futile, or in awarding attorneys' fees when Trader Joe's Complaint was exceptionally weak on the merits and improperly motivated.

## STATEMENT OF THE CASE

### I.    FACTUAL BACKGROUND.

#### A.    Trader Joe's two-year history of Union interference.

##### 1.    Trader Joe's charged with violating the rights of organizing employees at Hadley store.

From June 2, 2022, to May 10, 2023, Trader Joe's employees in Hadley, Massachusetts filed and served eight NLRB unfair labor practice ("ULP") charges against Trader Joe's. 2-ER-152-153. Since May 2022, Trader Joe's unfairly enforced a rule against union supporters. 2-ER-154. It prohibited employees from wearing union insignia at least eighteen times between May and June 2022 and threatened employees with negative appraisals if they did so. 2-ER-155.

On May 14, 2022, employees including Jamie Edwards, Maeg Yosef, and Arthur Hoagland, presented demands to bargain with Appellant. 2-ER-153, 2-ER-155-156. About May 30, 2022, Trader Joe's sent Edwards home from their shift, and shortly after did the same to Yosef. 2-ER-156.

On June 8, 2022, Trader Joe's United (TJU) filed a representation petition seeking to represent the Hadley workers. 2-ER-179. About June 20, 2022, Trader Joe's disciplined Hoagland. 2-ER-156. The NLRB complained that it did so in retaliation for union activities, and to discourage others from joining the Union. *Id.*

About mid-June 2022, Trader Joe's interrogated its employees. *Id.* On about June 29, 2022, it threatened employees that it would freeze their wages; and in July 2022, threatened they would not receive raises, and working conditions would worsen if they voted for the Union. *Id.* In mid-July, it repeated those threats. 2-ER-157. In July 2022, it misrepresented workers' rights under the NLRA, threatened employees that unionization could lead to the loss of existing benefits and made other unspecified reprisals. *Id.* That month, it held mandatory captive-audience meetings. *Id.* Throughout June and July 2022, it cornered employees, forcing them to listen to their position on the union. *Id.*

On July 28, 2022, the Hadley workers voted for TJU. 2-ER-179. On August 5, 2022, the NLRB certified the result. *Id.* In Fall 2022, Trader Joe's provided false information about bargaining on its website and nationwide, impliedly threatening employees with reprisal for union activity. 2-ER-157.

In 2022, Trader Joe's employee Steve Andrade engaged in union activity. SER-18, link to NLRB Complaint, which is attached at SER 44-63 for convenience; SER-50-51. On June 8, 2023, Trader Joe's fired Andrade. SER-51(i) (should say 2023, not 2022). The NLRB complaint charged Trader Joe's with retaliation for Andrade's union organizing. *Id.* at (l).

About January 23, 2023, Respondent provided a less favorable retirement benefit to its unionized employees. SER-18, SER-51(k). On July 7, 2023, the NLRB General Counsel issued a consolidated complaint and notice of hearing on the June-July 2023 charges. 2-ER-152.

### 2. The Minneapolis store victory.

On June 28, 2022, TJU filed a petition seeking to represent workers at the Minneapolis, Minnesota store. 2-ER-180. On August 12, 2022, the Union won and was certified shortly after. *Id.* On November 7, 2022, the Union filed and served an ULP alleging Trader Joe's interfered with employees' rights. 2-ER-165-166. On May 25, 2023, the NLRB issued a complaint and noticed a hearing for October 24, 2023. 2-ER-168.

### 3. The Oakland store victory.

On March 23, 2023, TJU filed a petition with the NLRB seeking to represent workers at an Oakland, California, Trader Joe's store. 2-ER-181. In April 2023, the Union won and was certified. *Id.* TJU was forced to file multiple ULPs regarding Trader Joe's retaliatory conduct. *Id.*

### 4. Unfair practices and stalled bargaining.

Since November 2022, the parties have been negotiating contracts for Hadley and Minneapolis. In April 2023, Trader Joe's refused to continue. 2-ER-181. Both parties have filed bad faith bargaining charges. *Id.*

In January 2023, the NLRB certified TJU's victory at the Trader Joe's in Louisville, Kentucky. 2-ER-180. Despite an NLRB ruling on May 26, 2023, overruling and denying all Trader Joe's objections to the conduct of the election, Trader Joe's continued to contest the election results. *Id.*

### 5. The retaliatory and chilling timing of this lawsuit.

On July 13, 2023, six days after the NLRB issued its Hadley consolidated complaint, Trader Joe's filed the instant lawsuit. 1-ER-10, 2-ER-198. Not only that, but within two years of employees organizing and winning elections, multiple NLRB charges against Trader Joe's, and demands to bargain; eleven months of Trader Joe's providing false information, six months of withholding retirement benefits to organized workers, four months of Oakland's representation petition, 2.5 months after Oakland won, two months of additional NLRB charges, including retaliation; less than two months of Trader Joe's frivolous election objections overruled, one month of yet another demand to bargain, and within only one week of terminating Andrade, Trader Joe's filed the instant trademark lawsuit.

> "Within the last two years, workers at multiple Trader Joe's store locations across the country have unionized.[] The National Labor Relations Board (NLRB) has filed multiple complaints against Trader Joe's related to these union elections.[] On July 7, 2023, the NLRB issued a consolidated complaint against Trader Joe's for unfair labor practices including retaliation, interrogation, threats, and

misrepresentation of the Union. Six days later, Trader Joe's filed its Complaint in this action." 1-ER-9-10.

In summer 2023, Trader Joe's sent two letters to the Union demanding it cease selling the items or it would file the instant lawsuit. SER-17. On June 28, 2023, the Union responded advising the Company that the threatened lawsuit was frivolous and in bad faith. *Id.*

### B. Despite notice of its frivolity, and drenched in ULPs, Trader Joe's filed this lawsuit; the District Court dismissed it entirely and without leave to amend.

On July 13, 2023, Trader Joe's filed suit and sought an injunction, alleging that the Union infringed on its trademarks of a cutting board with wine, cheese, and grapes in a circle, by selling buttons, apparel, and tote bags bearing the word "union" or a fist with a box cutter in a circle. SER-17.

On August 21, 2023, TJU moved to dismiss. 2-ER-174-197. On October 6, 2023, the Union filed a Notice of Supplemental Authority, *Medieval Times U.S.A., Inc. v. Medieval Times Performers United, and American Guild of Variety Artists*, No. 2:22-cv-6050 (D.N.J. September 28, 2023), in support of its Motion to Dismiss. Dkt. 34. There, the court dismissed Medieval Times' trademark infringement complaint against the Medieval Times Performers United union, holding that "[g]iven the union context, customers are … not likely to be confused … ." *Id.*, 2. The Union again demanded that Trader Joe's withdraw its Complaint. SER-18.

8

On November 9, 2023, at the motion to dismiss hearing, Appellant conceded that the tote bags were the only product sold by both parties, and their fonts were different. 1-ER-17, 19. The District Court was clear it was not ruling from the bench. 2-ER-108. On January 12, 2024, the District Court ruled that the allegations were implausible, and the suit was "an attempt to weaponize the legal system to gain advantage in an ongoing labor dispute … ." 1-ER-15. Due to the labor dispute, it lacked jurisdiction under the NLA to grant Trader Joe's request for an injunction. 1-ER-14-15.

As to the Lanham Act, Trader Joe's failed the *Sleekcraft* infringement test. 1-ER-17. First, the goods were not related because the only product sold by both parties was the dissimilar tote bags. *Id.* Otherwise, union organizing and grocery services were not related, and the union context made confusion even less likely. 1-ER-17-18. Also, the only place consumers could buy union goods was through its website, "which is openly critical" of Appellant's labor practices, eliminating confusion. 1-ER-18.

Second, the District Court held there was no visual similarity between the marks on the only remaining product, the tote bags. 1-ER-19. One had a fist and boxcutter, a symbol of social justice movements, and the other a fruit basket. *Id.* The red and circle's similarity was negligible and the fonts

were different. *Id.* The most apparent similarity was the name, which was uncontested by Trader Joe's and legally protected. 1-ER-19.

Third, it held there was no market convergence because only the Union sold goods online. 1-ER-20. Consumers encounter these goods "steeped in the language of labor activism" on TJU's website, while the core of Appellant's brand is in-store grocery retail. *Id.* Fourth, as to customer care when purchasing, the District Court held the union context, including the .org extension of TJU's website and its labor rights message, showed no plausible confusion. 1-ER-21.

As to dilution, the District Court held that it required similarity and there was none here and the name was nominative fair use. 1-ER-22-23.

### C. The District Court granted fees finding the claims exceptionally weak and improperly motivated.

On January 26, 2024, TJU moved for fees. SER-14-25. Trader Joe's attorneys declared improperly new allegations. 2-ER-41-91. On July 25, 2024, the District Court awarded fees. The Complaint "lacked merit because no reasonable consumer could plausibly be confused as to the source of the Union's labor-themed and visually distinct merchandise." 1-ER-3, finding it "[e]xceptional for lack of substantive merit." The only similarity was two red circles of different ratios, which did not show

similarity, "a salient factor in the *Sleekcraft* analysis." 1-ER-5. The labor context eliminated confusion. *Id.*

"Recognizing the extensive and ongoing legal battles over the Union's organizing efforts at multiple stores," the District Court "[could not] ignore" the "inferred improper motivation where weak claims were brought during an 'unrelated'" conflict and ruled to deter employers "from bringing meritless claims against unions they are challenging at the ballot box." 1-ER-5. On July 25, 2024, Appellant appealed the ruling to dismiss without leave to amend. Dkt. 17.1.

## SUMMARY OF THE ARGUMENT

I.     The District Court correctly concluded that the dispute described in Trader Joe's Complaint unquestionably "involve[s] or grow[s] out of a labor dispute" within the meaning of NLA at 29 U.S.C. § 104, divesting that Court of jurisdiction. Here, there has been a two-year intense labor dispute with multiple NLRB filings, a retaliatory firing and other discipline, and Trader Joe's removal of retirement benefits from organized workers, amongst other employer unlawful practices.

II.     There was no infringement here because Trader Joe's "exceptionally weak" allegations failed *Sleekcraft*. 1-ER-5. Even with Trader Joe's strong mark, the marks are visually dissimilar, goods are not sold in

the same place, the parties are not direct competitors, the name is nominative fair use, and TJU's logo and website is steeped in labor messaging. The buttons are dissimilar and the grocery's beverages are not related to the Union's mugs with a fist and boxcutter. TJU's products did not identify Trader Joe's as their source.

III.    The District Court held that there could be no dilution because the tote bags were visually dissimilar. "Trader Joe's United" was used to identify Trader Joe's as the employer of the organizing workers, not to identify Trader Joe's as the product's source, and protected.

IV.    It was futile to grant leave to amend where the marks were so dissimilar, failed *Sleekcraft*, the new improperly raised products were equally implausible, and it was in the context of a labor dispute.

V.    This case was exceptionally weak in its claims and motivated by anti-union animus. An attorneys' fee award was necessary as clearly, it has not deterred Trader Joe's from filing this frivolous appeal.

## STANDARD OF REVIEW

The court reviews de novo dismissals based on Rule 12(b)(6) failure to state a claim. *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1141 (9th Cir. 2021). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 1-ER-12. It need

not appear beyond doubt the plaintiff can prove no set of facts in support of the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561–63 (2007). The Court acts within its discretion in denying leave to amend when it would be futile. *V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC.*, 946 F.3d 542, 547 (9th Cir. 2019).

A court's denial of an injunction will be reviewed for abuse of discretion. *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 724 (9th Cir. 1983). The Court reviews "the district court's decision on fees awarded under the Lanham Act … for an abuse of discretion." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016).

## ARGUMENT

### I. THE UNION DID NOT USE TRADER JOE'S MARK, THUS IT DID NOT SELL TRADER JOE'S-BRANDED GOODS IN COMMERCE.

Appellant continues to claim that TJU sold "goods with infringing marks," dkt. 17.1, but the District Court held that TJU did not infringe on Trader Joe's mark as the logos were not similar and other *Sleekcraft* factors were not satisfied. 1-ER-5-6, 1-ER-9,

> "the logos used by the Union are in a different font, do not utilize the distinctive fruit basket design, apply concentric rings of different proportions, and are applied to products that no reasonable consumer could confuse as coming from Trader Joe's itself."

**Where there was no infringement, it is immaterial that TJU sold goods.** Trader Joe's was free to bring its trademark claims but they were exceptionally meritless and dismissed without leave to amend.

The District Court held that TJU did not infringe on Trader Joe's mark and the name – to which Trader Joe's consented – was nominative fair use. 1-ER-24; *New Kids on the Block v. News Am. Pub., Inc.,* 971 F.2d 302, 308 (9th Cir. 1992),

> "Such *nominative use* of a mark—where the only word reasonably available to describe a particular thing is pressed into service—lies outside the strictures of trademark law: Because it does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition; such use is fair because it does not imply sponsorship or endorsement by the trademark holder."

Trader Joe's United's used the name to identify and criticize Appellant, not to identify the source of its goods as from Appellant.

Appellant relied on *Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chicago*, 856 F. Supp. 472 (N.D. Ill. 1994) to claim that courts commonly enjoin unions for using a mark outside of the context of a labor dispute or "core union activities." Dkt. 17.1, 35-36. There, unlike here, the court found "substantial similarity between a well-known federally registered logo and the logo being used by the defendant" and thus "consumer confusion [was] likely." *Brach*, 475.

14

Case law supports dismissing claims by employers suing unions for trademark violations during a labor dispute. *See Silgan Containers LLC v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, No. 18-C-213, 2018 WL 5840766, at \*1 (E.D. Wis. Nov. 8, 2018), dismissing at 12(b)(6) stage at \*3-4. NLA's "ban on federal injunctions is not lifted because the conduct of the union is unlawful under some other … statute." *Burlington N. R.R. v. Bhd. of Maint. of Way Emps.*, 481 U.S. 429 (1987).

## II. COURT WELL WITHIN ITS DISCRETION WHERE THE NORRIS-LAGUARDIA ACT DEPRIVED IT OF JURISDICTION TO PROVIDE THE REQUESTED INJUNCTIVE RELIEF.

Appellant argued that (1) the NLA does not apply at all because the case does not grow out of a labor dispute. NLA, 29 U.S.C. § 101, "No court of the United States … shall have jurisdiction to issue any … injunction in a case involving or growing out of a labor dispute … "; and (2) even if it did, the NLA does not categorically bar injunctive relief because selling branded goods is not among the enumerated acts in Section 104 of the NLA.

### A. This was a labor dispute under the NLA.

The District Court correctly dismissed Trader Joe's request for injunctive relief because this case "unquestionably" grew out of a labor dispute. 1-ER-14, 29 U.S.C. § 104. The suit's timing "following a tide of contentious organizing efforts and mere days after the issuance of a

consolidated NLRB complaint," combined with the "weakness of [] claims," evinced a labor dispute. 1-ER-15.

### 1. This case arose from an intense labor dispute.

Under the Act, 29 U.S.C. § 113,  a labor dispute includes,

> "'any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment ... .'" *Silgan*, 2018 WL 5840766, at *2.

Contrary to Appellant's contention that the NLA's bar on injunctions is limited to "certain core labor actions," its policy against judicial intervention in labor disputes is so strong and broad that "not even the specter of a national paralysis ... [is] considered sufficient to overcome Congress' withdrawal of jurisdiction." Dkt. 17.1, 36-7; *Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 100 v. E. Airlines Inc.*, 826 F.2d 1141, 1145 (1st Cir. 1987).

In *Silgan, supra,* at *1, the Seventh Circuit found that the NLA prohibited enjoining the union's use of the employer's trademark in "in an effort to organize Silgan employees to vote in favor of unionizing," as here. *Silgan* held the name "may serve to identify and publicize the employer which is the target of the campaign and to instill a measure of collective

identity among employees," which are "legitimate union objectives" that cannot be enjoined under the NLA. *Id.* at *2, *see also* 1-ER-19, FN 7.

Notably, *Silgan* dismissed the employer's complaint at the 12(b)(6) stage, finding the union's use of the employer's trademark offered no plausible evidence of confusion because it was not a "source-identifier" but used to "identify Silgan as the employer" IAM was organizing. *Id.* at *3.

*See also Marriott Corp. v. Great America Services Trades Council, AFL-CIO,* 552 F.2d 176, 179 (7th Cir. 1976), holding that a labor organization's use of an employer's mark in an organizational campaign is a "labor dispute" within the meaning of the Norris-LaGuardia Act and no injunction was permitted. There, as here, the "organizational efforts of the unions to achieve representation of Marriott's workers [were] the foundation of this dispute." *Id.*

Likewise in *Lucky Stores, Inc. v. Int'l Bhd. of Teamsters Local Nos. 70, 78, 150, 490*, 812 F. Supp. 162, 163 (N.D. Cal. 1992), where the employer claimed trademark infringement but the Court found a labor dispute where the parties were bargaining a contract and the materials were to generate union support.

Appellant's cases are irrelevant. *Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 147 (1942) addressed a contractual dispute among

17

businessmen over the sale of fish, not a labor dispute between an employer and employees, unlike here. *Burlington Northern & Santa Fe Ry.*, 203 F.3d 703 (9th Cir. 2000) held that the NLA's reach broadly applied to union activity, including who subcontractors had to hire. *Id.*, 707.

Here, as in *Burlington*, the "matrix" of TJU's dispute with Trader Joe's is "the employer-employee relationship." *Id.* at 709. TJU is organizing Trader Joe's employees and attempting to bargain with Trader Joe's.

*New Negro Alliance v. Sanitary Grocery Co.*, 303 U.S. 552, 560-61 (1938), supports TJU. There, the Supreme Court held the NLA's bar against injunctions not only included "controversies" regarding union representation drives, as here, but also those arising from discriminatory hiring practices. *Id.*, 561.

In *Pineda v. Skinner Servs., Inc.,* 22 F.4th 47, 57 (1st Cir. 2021), the court determined that a dispute over unpaid wages covered by the Fair Labor Standards Act was not covered by the NLA. Here, the controversy is not unpaid wages under FLSA but rather nationwide disputes relating to NLRB complaints, union organizing, and collective bargaining.

In both *Brotherhood of R. R. Trainmen v. New York Cent. R. Co.*, 246 F.2d 114, 117 (6th Cir. 1957) and *Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chicago*, 856 F. Supp. 472, 477 (N.D. Ill. 1994), as

explained further in *Brach Van Houten Holding, Inc. v. Save Brach 's Coalition for Chicago*, No. 94-C-3178, 1994 WL 516802, at *2 (N.D. Ill. Sept. 19, 1994), there was no labor dispute because the matters concerned a worksite closing which had not yet effected employees, was a management decision, and negotiations post-controversy could not be the impetus for the preceding alleged labor dispute. *Brach,* 1994 WL 516802 at *3.

Here, the controversy is as to representation of workers, collective bargaining, and NLRB complaints regarding those matters, and it arose before Trader Joe's filed suit. The District Court rightly identified timing and lack of harm as support for its conclusion.

Appellant contended that if the NLRB complaints and labor-related matters were resolved, its trademark claims would remain. However, as was clear to the District Court, if there were no anti-union campaign, Appellant would never have filed this sanctionable complaint against Trader Joe's United in the first place.

### 2. The ULPs and NLRB complaints showed this Complaint grew from a labor dispute.

Appellant argued that the timing of its suit did not support that this case grew out of a labor dispute. It again misstated the District Court's holding. Indeed, following a tide of contentious organizing efforts and mere

days after the issuance of a consolidated NLRB complaint was issued against it, Trader Joe's filed this suit." 1-ER-15.

The District Court did not rely only on the timing between the July 7, 2023, NLRB consolidated complaint against Trader Joe's and its Complaint here, filed six days later. Rather, the District Court also recognized that within the last two years, Trader Joe's employees have been organizing a union in the face of merciless tactics from Trader Joe's, including, as cited by the NLRB, captive audience meetings, threats to freeze wages and worsen conditions, withholding of benefits, and retaliatory discipline. 1-ER-9-10, FN 1 and 2, 2-ER-156-58, 2-ER-166-67, SER-18, SER-50-51. Its anti-union animus is shown where it filed objections to union elections which the NLRB denied, but it continued to contest the results; it stalled negotiations and refused to bargain. 2-ER-180-181. This lawsuit was part of the Company's vast toolbox in their unconscionable anti-union campaign.

### 3. Trader Joe's allegations of harm are conclusory.

Appellant argued that the Court wrongly held that sales by TJU would "undoubtedly" not impact Trader Joe's because it pleaded it would harm Trader Joe's significantly. Dkt. 17.1, 41. A court need not "assume the truth of legal conclusions cast in the form of factual allegations," as here. 1-ER-12, 2-ER-200 ¶ 8, 2-ER-208, ¶ 32, 2-ER-214, ¶ 63, conclusory allegations.

Rather, the District Court found that the "'relative impact' of online sales of campaign merchandise like buttons, t-shirts, and mugs on Trader Joe's product market is undoubtedly de minimis," supporting that Appellant's Complaint grew out of a labor dispute. 1-ER-14. In addition, the District Court found no infringement or dilution regarding TJU's products, and thus there could be no impact on the product market. It held, "there is no relation between Plaintiff's grocery services and goods and the Union's buttons and mugs." 1-ER-17.

The real impact of this lawsuit is its "significant" "potential chilling effect and other collateral impacts on union members." 1-ER-14.

## B. TJU selling goods is immaterial because there was no infringement.

Appellant argued that Section 104 does not protect the sale of goods in commerce, relying heavily on *Senco Prod., Inc. v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC*, 311 F. Supp. 590, 592 (S.D. Ohio 1970)'s dicta at FN 1. Since the goods were not infringing, it is immaterial that TJU sold them.

In addition, of course TJU's products "publicize[d]" a labor dispute. Dkt. 17.1, 29, 29 U.S.C. § 104(e). The buttons and tote say, "a union lifts us all" with a can of corn, "union," and/or have a raised fist, "widely recognized as a symbol of labor, social, and political movements." 2-ER-

206-207, 1-ER-19. *See also Davis v. Am. Broad. Co.*, No. 22 CIV. 5944 (KPF), 2024 WL 1178014, at *18 (S.D.N.Y. Mar. 19, 2024), "raised fist in protest is a well-recognized gesture of solidarity"; *Think Rubix, LLC v. Be Woke. Vote*, No. 2:21-CV-00559-KJM-AC, 2022 WL 1750969, at *1 (E.D. Cal. May 31, 2022), *appeal dismissed* Jan. 5, 2024), "raised fists" used "in association with its political and civic engagement services." The boxcutter too references the work of cutting boxes, not grocery services. Cementing this frivolous argument is that Trader Joe's takes no issue with another button that states, "a union lifts us all" and a pallet jack. 2-ER-209-210.

There was no apparel pictured in the Complaint. The "apparel" improperly raised by Plaintiff in its unsuccessful opposition to Motion for Attorneys' Fees were employee uniforms that Trader Joe's does not sell. 2-ER-35, 2-ER-67-68. The union t-shirt featured the raised fist. 2-ER-97.

There was no infringing goods sold by the Union. Rather, the Union is selling totally distinct merchandise to engage in collective action and publicize its union organizing and bargaining efforts.

## III. TRADER JOE'S FAILED TO ALLEGE SIMILARITY, RELATED GOODS, AND OTHER SLEEKCRAFT FACTORS.

The dispute in this matter concerns whether Appellee's union-branded merchandise was likely to cause consumer confusion. Appellant failed on seven of the eight *Sleekcraft* factors. *AMF Inc. v. Sleekcraft Boats*,

599 F.2d 341, 348 (9th Cir. 1979), *abrogation in part on other grounds recognized by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003). Those include: (1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the sight, sound and meaning of the marks; (4) evidence of actual confusion; (5) degree to which the marketing channels converge; (6) types of goods and degree of care consumers are likely to exercise when purchasing them; (7) intent of defendants in selecting the infringing mark; and (8) likelihood that the parties will expand their product lines. *Id.*

The "similarity of the marks and whether the two companies are direct competitors [] will always be important" factors. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

## A. The District Court rightly dismissed this case due to the implausibility of Appellant's allegations.

Appellant argued that there must be an "intensely factual" investigation into likelihood of confusion before dismissal, which is the "exception." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202. The District Court undertook a thorough analysis of the *Sleekcraft* factors and concluded "there is no likelihood of confusion posed by the Union's campaign-related products" because the logos were so different the Complaint was "dangerously close to the line of Rule 11." 1-ER-9.

Appellant's Complaint failed on seven out of the eight *Sleekcraft* factors, even taking the allegations as true.

> "Simply put, not 'every infringement case involving a source-identifying use requires full-scale litigation.... [I]f, in a given case, a plaintiff fails to plausibly allege a likelihood of confusion, the district court should dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).'" 1-ER-16, *quoting Jack Daniels Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140, 157, FN 2.

Leave to amend here would be "futile" because "there is no plausible likelihood of confusion under these circumstances." 1-ER-23.

Appellant cited *Bliss Collection, LLC v. Latham Companies, LLC,* 82 F.4th 499, 508 (6th Cir. 2023). The parties there were direct competitors manufacturing children's clothes. The court noted that where the goods are unrelated as a matter of law, dismissal on a motion to dismiss is appropriate. This is so here. The tote bag was the only item sold by both parties, and there was no similarity there. Otherwise, there was no relation between grocery services and the Union's buttons and mugs. Consumers are unlikely to be confused due to the union-employer "adversarial" context. *Bliss* does not aid Appellant.

*Robinson v. Hunger Free America, Inc.*, No. 118CV00042LJOBAM, 2018 WL 1305722, at *4 (E.D. Cal. Mar. 13, 2018), is apt. There, the court dismissed a complaint because the types of goods were dissimilar and the designs of "Hunger Free America" were different, as here.

24

**B.   The Court properly considered the TJU website.**

Appellant argued the District Court improperly incorporated the contents of TJU's website based on the Complaint's "passing references" to it. Dkt. 17.1, 33. It argued that the District Court erred in finding consumers would find TJU's products only through their website, "steeped in the language of labor activism," because TJU "customers" could navigate directly to the TJU store page, which lacked labor language. *Id.*, 34.

First, it was incumbent upon the District Court to consider the union context, which Appellant attempted to evade through artful pleading to just the TJU store page. "Courts have often found that a labor union's use of an employer's trademark as part of communications about the employer's labor practices is unlikely to cause confusion in context. *See Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 579 (S.D.N.Y.)." 1-ER-18.

Second, far from "passing references," the basis for the Complaint is the TJU website and the District Court could surely consider it.

> "Courts may properly consider materials referenced in the complaint under the incorporation by reference doctrine, even if a plaintiff failed to attach those materials to the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see* Compl. ¶ 4, n.1 (citing the Trader Joe's United's website at https://store.traderjoesunited.org/).

> "Public records and documents on publicly available websites are also proper subjects of judicial notice. … These statements and materials

appeared on Defendant's publicly available website and are thus proper subjects for judicial notice," 1-ER-21, FN 10, taking "judicial notice for the limited purpose of establishing" statements made, not for their truth.

The District Court addressed that a user could find themselves on the store page without navigating through the homepage. It cited the "About Us" link that would direct the user back to the homepage with labor advocacy, and the .org extension. 1-ER-21-22. The store page showed the raised fist, a social justice symbol. 1-ER-19, 2-ER-206. The labor context is "inescapable" based on the TJU logo of the raised fist itself. Dkt. 17.1, 47.

"The decision to take judicial notice and/or incorporate documents by reference is reviewed for an abuse of discretion," and courts may do so without converting a motion to dismiss to a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-999 (9th Cir. 2018). The District Court was well within its authority.

*P & P Imports LLC v. Johnson Enterprises, LLC*, 46 F.4th 953, 958 (9th Cir. 2022) does not hold that the court must allow evidence. There, unlike here, plaintiff alleged that defendant wholesale copied its game design with intent to deceive. *Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1014 (9th Cir. 2023), a case about time allowed for prisoner phone calls, is not relevant here.

### C. *Sleekcraft* factor 1. Trader Joe's strong mark did not make its claims plausible.

There was no dispute that Trader Joe's has a strong mark – which TJU did not use. *Sleekcraft* at 348-349, strong mark factor. The District Court noted that it afforded Trader Joe's mark the greatest scope of protection. 1-ER-22, FN 11. "Even so, the Union's designs are not infringing if the other factors do not demonstrate a likelihood of confusion." *Id. New W. Corp. v. NYM Co. of California*, 595 F.2d 1194, 1202 (9th Cir. 1979), considering a dispute between two magazines both using the name "New West" is inapposite. Here, the tote bags were visually dissimilar, and there was no other related product.

### D. *Sleekcraft* factor 2. The campaign merchandise was not in proximity to groceries.

Appellant argued that the District Court applied the wrong standard for relation of goods, and that the TJU campaign merchandise did not themselves criticize Trader Joe's anti-labor practices. Dkt. 17.1, 50-52.

#### 1. The Court applied the right standard and found *no* relation.

Appellant argued that the District Court erred because goods need not be in direct competition to be considered "related." Dkt. 17.1, 50. However, the District Court found **no** relation between Appellant's grocery services and the Union's buttons and mugs. 1-ER-17. Appellant confirmed the only

product both parties sold was the tote bags, which did not satisfy the *Sleekcraft* factors. 1-ER-17-18.

The District Court strongly held that the purchasing context, where consumers can only purchase TJU merchandise online through its website criticizing Trader Joe's working conditions, minimized the likelihood that the public would mistakenly assume the goods were related. *Id.*

"Related goods are those products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Sleekcraft,* FN 10.

> "When the goods are related, FN 10, but not competitive, several other factors are added to the calculus. If the goods are totally unrelated, there can be no infringement because confusion is unlikely." *Id.*, 348.

Appellant's cases are inapposite. "A genuine issue of material fact … exists, under the 'proximity of goods' factor, [as] to whether Fortune's footwear and Victoria's Secret's tank top are related." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1035 (9th Cir. 2010) (companies used word "Delicious" on shoes and tank top.)

"In addressing this factor, our 'focus is on whether the consuming public is likely somehow to associate [Fortune's DELICIOUS footwear] with [Victoria's Secret's tank top]." *Id.* at 1035. The court found the "intuitively

close" relationship of these shoes and shirt in the minds of their common purchaser, young women, created a possibility of a proximity of goods.

Appellant claimed it pleaded that "the products were sufficiently related that consumers would likely associate them." Dkt. 17.1, 37. It cited to its Complaint at ¶ 29, but that only refers to tote bags. It did not plead that the buttons and mugs were related goods to its products. They are not.

Appellant now argued, for the first time, that the buttons, like tote bags, are accessories, and thus they are related goods (unlike Trader Joe's grocery services and TJU's buttons). It argued, incredibly, that a reasonable consumer would believe the buttons complained of here, with either the raised fist or "a union lifts us all" or "union," came from Trader Joe's because Trader Joe's sells tote bags.

First, the District Court rightly found no similarity or other *Sleekcraft* factors as to the tote bags. A jump from that dissimilarity to an infringing connection between the buttons and tote bags defies reason. Second, no reasonable consumer could confuse buttons with the word "union," or the social justice image of the raised fist, with products from Trader Joe's.

Trader Joe's does not dispute TJU's use of the name, unlike *Fortune Dynamic*. Finally, there was no "intuitively close" association relationship

pleaded, and none in the mind of the public between Trader Joe's tote bag and the union's political buttons, or totes and buttons generally. *Id.,* 1035.

Likewise with the union mugs and Trader Joe's registrations for use of its word mark on coffee, coffee beans, tea, and cocoa. Appellant reached for straws when it claimed in its Appeal that, even though it repeatedly conceded in the record, in writing and orally, that tote bags were the only product both parties sold, and admitted in its opening brief that it does not sell coffee mugs; it based this appeal on a theory that trademark over its *word mark* on those words were complementary to the union's mugs, and thus satisfied Factor 2. Dkt. 17.1, 50-51.

In fact, "generic marks" refer to the genus of which the particular product is a species, such as "bread" or "door," and "are not registrable" as trademarks. *Park `N Fly, Inc. v. Dollar Park Fly, Inc.*, 469 U.S. 189, 194, (1985). Notably, Trader Joe's failed to even include any images of the complained-of mugs. Here, there was no plausibility that the public would assume that the goods at issue were related.

### 2. TJU's goods criticized Appellant's labor practices.

Appellants bizarrely claimed in its Opening Brief that Appellee's goods did not criticize Appellant's corporate practices. Dkt. 17.1, 51-52. The District Court properly evaluated the website, as described, *supra*.

Even from the selectively chosen excerpts from TJU's website that Appellant included in its Complaint, it was plain that TJU's alleged use of Plaintiff's mark was part of a labor dispute. Each item inherently criticized Trader Joe's labor practices and/or communicated the union's message.

The website header logo read "TRADER JOE'S UNITED" and included a black fist holding a neon green colored boxcutter. 2-ER-206. The TJU buttons read: "A UNION LIFTS US ALL," "UNION, TRADER JOE'S UNITED, NATURALLY SWEET NO ADDED NONSENSE," and "TRADER JOE'S UNITED" with the raised fist and a pride flag in the background. 2-ER-207. Likewise for the tote bag's raised fist. 2-ER-208.

Moreover, these products are only available on a website that included an embedded video on the homepage featuring worker organizers across the country supporting unionization efforts. TJU's website homepage stated, "We've seen Trader Joe's shift from a workplace with [good conditions] … to a company with increasing turnover, declining benefits, and stagnating wages." 2-ER-185. Where the claims do not satisfy *Sleekcraft*, the sale of goods was irrelevant.

### E. *Sleekcraft* factor 3. There was no similarity.

Appellant argued here, for the first time and contrary to its long-held position, that TJU's use of the Trader Joe's name violated the Lanham Act.

It argued that TJU's use of capital letters and a font that it claimed was similar to Appellant's violated the Act. Appellant's Appeal is frivolous as it stated, "For starters, the challenged marks encompass Trader Joe's word mark in its entirety. That alone demonstrates similarity." Dkt. 17.1, 52.

However, Appellant conceded in its Complaint, its Opposition to Motion to Dismiss and at oral argument that it does not complain of Appellee's use of the words "Trader Joe's." 2-ER-103, 130, 209.

> "Trader Joe's cannot have it both ways. They cannot state they take no issue with use of the name "Trader Joe's" but yet rely on its use to evince the similarity of the marks." 1-ER-19.

It is well settled that such claims are rejected. *Senco Prod., Inc. v. Int'l Union of Elec., Radio & Mach. Workers*, *AFL-CIO-CLC*, 311 F. Supp. 590, 592 (S.D. Ohio 1970) (holding the court could not enjoin the union from using the employer's name "[s]o long as the employer's name is used in such a way that the casual reader would clearly understand that it was the Union and not the employer … ."). 1-ER-19, FN 7.

Appellant raised the color red and the circle. The District Court found these to be "negligible similarities," and that the rest was "not similar." 1-ER-19. The red typeface is undisputedly unrelated in font, which Appellant conceded at oral argument; and the placement of text is different. *Id.*, *see also* 2-ER-208 (Trader Joe's counsel conceded the tote bags had different

32

font.) "The spacing of the concentric rings is not the same." 1-ER-19. The Union's design has a fist, a symbol of social justice and not groceries, and box cutter instead of a fruit basket, a symbol of food, Trader Joe's product market. 1-ER-19. Appellant never raised capital letters in the record below. That is nominative use and is of negligible similarity. In *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 281 (3d Cir. 2001), and unlike here, plaintiff raised the use of the word itself.

In *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1109 (9th Cir. 2016), the court held two vodka companies' use of puckered, lipstick-adorned lips as the "focal point" of their design in a similar angle and shape, color-coordinated to the vodka flavor evidenced similarity. Here, the "focal point" in these logos is totally different, as the fruit basket and raised fist are worlds apart. *Id.*

Even in challenging the tote bag, buttons, mugs and T-shirts, Appellant could not adequately plead similarities in these products.

### F. *Sleekcraft* factor 4. No evidence of actual confusion.

Appellant conceded this factor as it never argued it. Appellant alleged no actual confusion, only conclusory statements. 2-ER-199, 200, 210, 212, 214, 215. Its tote bags are only sold in store and are "collect[ibles]." 2-ER-

202. It has 4.6 million monthly online visitors. No consumer would believe that TJU's tote came from Appellant.

### G. *Sleekcraft* factor 5. TJU sells online, Trader Joe's in store.

Appellant argued that its allegations supported that the relevant "customer bases" of the Union and the grocery story overlapped, and that both "advertise" online to a "notable degree." Dkt. 17.1, 54-55. It argued the District Court only considered sales channels and not marketing channels.

It cited to *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1131 (9th Cir. 2014), where "[b]oth companies [sold] pomegranate-based or … flavored beverages," in the same grocery stores. This is entirely unlike the instant matter, where the parties are not direct competitors selling the same good or service.

It argued that the District Court failed to consider "initial confusion" before the sale created through TJU's "advertising" and post-sale confusion created by people using TJU goods. Dkt. 17.1, 55-56.

The District Court found that TJU only sold its campaign merchandise online, while Trader Joe's does not sell products online at all, and "in-store grocery retail is the very core of Trader Joe's as a company." 1-ER-20.

"Given this context, it is simply not plausible to imagine a reasonable consumer going to the Union's website, purchasing a Union-branded coffee mug, and mistakenly believing it to be sold by Trader Joe's." 1-ER-20, weighing this factor against Trader Joe's.

As to Internet advertising, the District Court relied on several Ninth Circuit decisions finding that because of the "broad use" and "ubiquitous" nature of the Internet as a marketing channel, "internet advertising alone is entitled to little weight." 1-ER-20, FN 9, referencing *Network Automation v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011). Trader Joe's cited no authority in arguing that this alone would make their conclusory allegations plausible.

Anyway, TJU does not "advertise" to a "notable degree" online, it is a struggling union with one website. While some union supporters may purchase groceries at Trader Joe's, there was no plausible allegation of an overlapping customer base between Trader Joe's tote bags "enthusiasts" and union supporters. 2-ER-202.

The District Court considered a "customer's" initial contact and point of sale with campaign merchandise and recognized that would all be within the Union website, "steeped in the language of labor activism." 1-ER-20. The products say "union" or feature a raised fist. The store page banner has a raised fist. A viewer of these products would not think a raised fist, or the

35

word "union," indicated the source of these products was Trader Joe's grocery store.

Appellant has raised the "initial interest" theory before, only to disclaim that it was asserting it. 2-ER-140. "Initial interest confusion arises when a consumer who searches for the plaintiff's website [online] is directed instead to the defendant's site because of a similarity in the parties' website addresses," and Internet initial confusion requires "intentional deception." *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 579 (S.D.N.Y.). "But here, there are no allegations that the Union intended to cause confusion or deceive the public." 1-ER-22, FN 11.

Here, unlike *Dr. Seuss*, there was no similarity in the fruit basket and fist, unlike the Cat's stove-pipe hat. *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997) ("the use of the Cat's stove-pipe hat ... to capture initial consumer attention.") Trader Joe's cannot have it both ways by not contesting the use of the name while relying on it to plead confusion.

There was no convergence in where a person could buy the parties' goods. There was obvious labor symbolism on the union's website and products. The consumer bases did not overlap, as consumers cannot buy Trader Joe's tote bags online, and cannot purchase buttons, mugs, or T-

36

shirts at all – Trader Joe's does not sell these. The District Court correctly weighed this factor against Appellant.

### H. *Sleekcraft* factor 6. The degree of care.

Plaintiff's Complaint failed to allege the type of goods and degree of care customers are likely to exercise in purchasing them but now argues that a visitor to "traderjoesunited.org" would exercise a low degree of care in buying a union-branded mug, apparel, or tote bag with a raised fist or the word "union" on it, and believe it was from Trader Joe's. This, not the District Court's determination that this factor was neutral, "strains credulity." Dkt. 17.1, 58.

As to the tote bags, Trader Joe's alleged that "enthusiasts are known to collect" these. 2-ER-202. These enthusiasts would obviously use a high or at least normal degree of care in purchasing the union's tote bag and immediately determine that a bag with a black fist holding a box cutter and stating, "Trader Joe's United," is not related to collectable items of the grocery store chain. This factor weighs against Trader Joe's. This case is nothing like shoes and a tank top that both say "DELICIOUS." *Fortune Dynamic*, 618 F.3d at 1038.

## I. Remaining *Sleekcraft* factors. Evidence of confusion, intent to infringe, likelihood of expansion.

Appellant argued lack of actual confusion and intent to infringe were not necessary to plead at this stage and should be neutral. Dkt. 17.1, 50. The District Court held that they were neutral. 1-ER-22, FN 11. Appellant claimed it did plead an intent to expand but did so in a conclusory manner. 1-ER-22. It failed to plead intent or deception, and it is not plausible to allege that TJU will expand into groceries, while Trader Joe's does not argue that it will begin selling buttons and mugs. If this Court weighs these factors, they should weigh against Appellant.

## IV. THERE WAS NO DILUTION WHERE THERE WAS NO SIMILARITY AND ONLY UNCONTESTED, NOMINATIVE FAIR USE OF THE NAME.

The District Court rightly dismissed Trader Joe's dilution by blurring claim on the facts and law. Factually, the District Court held that there was no dilution because the marks were not similar. "Dilution by blurring arises from the *similarity* between marks—one of them famous – 'that impairs the distinctiveness of the famous mark.'" 1-ER-23, *emphasis added*.

> "Blurring occurs when a defendant's use creates the possibility the plaintiff's mark will lose its ability to serve as a unique identifier of plaintiff's product. Here, there is no secondary product or association that would make the Trader Joe's marks lose their singularity." 1-ER-23, Order Granting Motion to Dismiss.

On the law, it held that TJU's use of the words "Trader Joe's" was nominative fair use. "The ... blurring claim was predicated on nominative uses and therefore failed as a matter of law." 1-ER-5.

Appellant argued (1) there was a "secondary product" which the District Court ignored because TJU sells products and places them in the market, and (2) that these TJU products identified Trader Joe's as their source ("source-identifier"), so the nominative exclusion does not apply. Dkt. 17.1, 62-63. Procedurally, it argued that "[d]ismissal on a ground not raised by the party seeking dismissal is an abuse of discretion." *Id.*, 62.

 "A trademark is not a trademark unless it identifies a product's source (this is a Nike) and distinguishes that source from others (not any other sneaker brand)." *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140, 145–46 (2023). "Trademark as a trademark" means the "accused infringer has used a trademark to designate the source of its own goods." *Jack Daniel's,* 145. "On dilution, we hold only that the noncommercial exclusion does not shield ... commentary when its use of a mark is similarly source-identifying." *Id.*, 163.

In *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008), this Court outlined four elements for dilution, including "(2) the defendant is making use of the mark in commerce." To establish the use of the mark

39

"in commerce," "the mark used by the alleged diluter must be identical, or nearly identical, to the protected mark." *Id.* In *Jada* at 634-35, the Court held that "a reasonable trier of fact could find that the HOT WHEELS and HOT RIGZ marks are nearly identical" because they both used the word "hot," showed flames, and had "similar colors" and "meaning." *See also Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1180 (9th Cir. 2007), holding that the marks must be identical or nearly identical.

"[*N]ominative use* of a mark—where the only word reasonably available to describe a particular thing is pressed into service—lies outside the strictures of trademark law" and is fair use. *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

> "A nominative use, by definition, refers to the trademark holder's product. It does not create an improper association in consumers' minds between a new product and the trademark holder's mark." *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 806 (9th Cir. 2002), holding that nominative use is excepted from anti-dilution law.

In *New Kids* at 308, Plaintiff sued newspapers for their "use of the New Kids *name*," unlike here. *Emphasis added. See also Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002), "*New Kids* involved the use … of the trademarked *name* of the plaintiff … ." *Emphasis added.*

First, the District Court held there was no similarity in the marks. TJU's tote bag does not identify Trader Joe's as its source, or use its

"trademark as a trademark," because their marks are not similar. *Jack Daniels* at 145. TJU did not use defendant's mark on its products. It used its own distinct visuals, and the name to identify the employer whose employees the union is organizing.

Appellant failed to plausibly plead any TJU product that used its mark – not the tote bag or any "secondary product." 1-ER-23. Therefore, the District Court concluded, "there is no secondary product … that would make Trader Joe's marks lose their singularity." 1-ER-23. The only possible association was the words "Trader Joe's" in "Trader Joe's United," but Appellant "cannot have it both ways," claiming no issue with the name but relying on it to show similarity. 1-ER-19.

Appellant failed on its party presentation argument. First, Defendant raised this ground by arguing that TJU's materials constituted "noncommercial speech" commenting on Trader Joe's and were thus protected. 2-ER-190-191. Nominative use to comment on the trademark owner is protected as noncommercial use. *Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 329 (4th Cir. 2015), holding that use of the mark "NAACP" was protected where used to comment on organization.

But even if not, it is Black letter law that "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal

theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." 36 C.J.S. Federal Courts § 688 (2024); *see also* Rutter Group Prac. Guide Fed. Ninth Cir. Civ. App. Prac. Ch. 7-C, 7:81.1, "[W]e have the authority to identify and apply the correct legal standard, whether argued by the parties or not," *citing Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013).

Appellant's cases are inapposite. In *Do v. First Fin. Sec., Inc.*, 694 F. App'x 481, 484 (9th Cir. 2017), the Court found that amending the Complaint was not futile. In *Greenlaw v. United States*, 554 U.S. 237, 244 (2008), the Court's holding was that "an appellate court may not alter a judgment to benefit a nonappealing party," not applicable here. In *United States v. Yates*, 16 F.4th 256, 271 (9th Cir. 2021), the Court considered only "harmless error," and affirmed the Court could consider it sua sponte.

## V. THE COURT WAS WELL WITHIN ITS DISCRETION TO REJECT ANY AMENDMENT TO THE COMPLAINT AS IT WOULD BE FUTILE.

Appellant argued that the District Court did not explain why it denied leave to amend, and that it could have presented Trader Joe's products that overlapped or related to TJU's campaign merchandise. Dkt. 17.1, 63-65. The District Court fully explained that leave to amend would be "futile," because

Trader Joe's could not satisfy *Sleekcraft*, this was a labor dispute, and there was no dilution because the marks were not similar. 1-ER-23, FN 12.

The leave to amend allegations were frivolous, improperly presented, and the theory as to "all goods" is misleading and previously disclaimed. In the lower court, Trader Joe's improperly argued in its Opposition to Attorneys' Fees that had it been granted leave to amend, it would have "demonstrated that it also sells or provides TRADER JOE'S branded t-shirts, cups, and pins. See Bina Decl., ¶¶ 3-4, Exs. 3-8." Dkt. 59, 12:10-12.

It did so again here. It relied on Exhibits 3 to 6, which show lacquered pins that said, "Rose Bowl Parade," with either a rose, gnome, banana sleeping in the clouds, or steampunk creatures. 2-ER 51-64. They were obviously Trader Joe's-Rose Bowl parade collaborations as they all said "Rose Bowl" on the item. These are no relation to TJU's buttons that say "union" or feature a raised fist.

Exhibit 7 is the Trader Joe's employee uniform and showed a hibiscus with "Trader Joe's" over it. 2-ER-65-69. Appellant does not sell these either. 2-ER-35-36. The TJU T-shirts again have the raised fist and boxcutter logo. 2-ER-67, *compare* employee uniform (third party selling uniform) with TJU T-shirt with fist and boxcutter at 2-ER-97. It already

43

admitted it does not sell button or mugs. 2-ER-104. The "coffee cups" are disposable paper cups that Plaintiff uses for samples. 2-ER-35.

Trader Joe's argument about how it would have amended to include how people encounter TJU products was equally spurious. Again, people would have to go to the union website, and even if they went to the store page, they would encounter the ".org" and raised fist. Google searches still show the TJU products themselves, whose logos themselves are symbolic of labor and thus there would be no likelihood of confusion.

Trader Joe's belied its unreasonableness and improper motivation procedurally. It did not seek leave to amend its Complaint after the Court's ruling by a motion for reconsideration. Instead, it appealed to this court which will only consider "the record before the trial judge *when his decision was made.*" *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077–78 (9th Cir. 1988), *emphasis in original*. Trader Joe's disclaimed that it sold buttons, mugs, and T-shirts when Judge Vera made his decision. It failed to include these totally different products when it filed its complaint and made no proper effort to amend, likely knowing that would be futile.

44

## VI. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION: TRADER JOE'S COMPLAINT IS "EXCEPTIONAL" IN ITS WEAK CLAIMS AND IMPROPER MOTIVATION.

Appellant argued that attorneys' fees were not warranted because its case was colorable under the Lanham Act, the NLA has never been applied to the "commercial sale of infringing goods," and it could have amended with plausible allegations. Dkt. 17.1, 67-68. It argued that the timing showed it brought the case in good faith and it was required to file suit.

The District Court found Trader Joe's claims to be "exceptionally weak" due to the lack of similarities between Appellant's marks and the Union's designs, and that the Union's merchandise was sold on its website "which openly communicates the Union's identity, mission, and adversarial relationship to Trader Joe's." 1-ER-5.

It inferred improper motivation where "inherent[ly]" "weak claims were brought during an 'unrelated' ongoing conflict ['extensive and ongoing legal battles over the Union's organizing efforts at multiple stores'] between the parties." 1-ER-5-6. It awarded fees finding that, "[e]mployers should be discouraged from bringing meritless claims against unions they are challenging at the ballot box" because of the chilling impact on union members. 1-ER-5.

45

## A.   The case was exceptionally weak and without merit, like this appeal.

Appellant made the same arguments here as it did in its unsuccessful Opposition to Attorneys' Fees that its pleadings were colorable and reasonable. Dkt. 46. This time it used new cases to create more work.

*Bliss Collection,* 82 F.4th 499, 508 (6th Cir. 2023), was about two manufacturers of children's clothes. Notably, the court in *Bliss* held that five total of eight factors weighed in favor of plaintiff, including the similarity factor. *Id.*, 514. Here, there was no similarity and Appellant majorly failed *Sleekcraft*.

In *Max Rack*, plaintiff created gym equipment called "Max Rack," and a direct competitor then created an "identical machine" called "Freedom Rack" and referred to it as "Max Rack" on its website, plausibly alleging likelihood of confusion; a jury found in favor of plaintiff. *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 457, 466-468 (6th Cir. 2022), *reh'g denied,* No. 20-3598, 2022 WL 3237492 (6th Cir. Aug. 10, 2022).

Here, the allegations show no plausible likelihood of confusion to an extraordinarily meritless degree.

Trader Joe's certainly had reason to believe the NLA barred such action. TJU told them, repeatedly, and other cases found the same, of which TJU informed them. It could not have reasonably believed the totally

46

different logos – except for the name which is permitted by law and to which it consented – infringed on its mark. It did not matter that TJU sold campaign merchandise. "In commerce" means the marks are identical or near identical, which they were obviously not here. *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1180 (9th Cir. 2007).

Likewise with nominative fair use. Trader Joe's six pack of big firm, expensive attorneys, experts in trademark law, surely knew unions may use the employer's name. 1-ER-19, FN7, listing authority rejecting such claims.

Trader Joe's newly raised products (parade buttons, employee T-shirts, coffee beans) are insulting. There is no likelihood of confusion that a consumer would confuse TJU's raised fist or "union"- emblazoned T-shirts, mugs, and buttons with Trader Joe's Rose Bowl pins, disposable paper cups, "mug-compatible" consumable items; and employee uniforms.

## B.    The case was brought in bad faith.

Obviously the District Court found Trader Joe's would not care about the TJU campaign merchandise in the absence of bad faith. "No reasonable consumer could plausibly be confused as to the source of the Union's labor-themed and visually distinct merchandise." 1-ER-3. Plaintiff's argument that it had to file this baseless Complaint in order to "police [its] mark" fails because the case law it cited required a *reasonable belief* in infringement.

Its cases are inapposite. *Caiz v. Roberts*, CV1509044RSWLAGRX, 2017 WL 830386, at *4 (C.D. Cal. Mar. 2, 2017), "reasonably believe[d] the mark ha[d] been infringed" when one defendant responded by removing content from their website.

In *Zosma Ventures, Inc. v. Nazari*, No. CV121404RSWLFFMX, 2013 WL 12129643, at *6 (C.D. Cal. Sept. 23, 2013), a jury rendered a verdict of $500,000 indicating reasonableness of plaintiff's allegations. In *Gibson Guitar Corp. v. Viacom Int'l, Inc.*, CV 12-10870 DDP AJWX, 2013 WL 3779593, at *4 (C.D. Cal. July 18, 2013), there was no evidence of improper purpose. In *Partners for Health & Home, L.P. v. Yang*, 488 B.R. 431, 438 (C.D. Cal. 2012), the attorneys' fees to plaintiff were larger than infringer's profits, indicating reasonableness of plaintiff's claims. In *Breaking Code Silence v. Papciak*, No. 21-CV-00918-BAS-DEB, 2022 WL 4241733, at *4 (S.D. Cal. Sept. 13, 2022), the court found it "difficult … to conclude … frivolous," *contra* this case where the Court found no plausible allegations of a likelihood of confusion.

Appellant's reliance on *Trader Joes Co. v. T-Shirt AT Fashion LLC,* No. CV2303010MWFRAOX, 2023 WL 9420440, at *1 (C.D. Cal. Dec. 20, 2023) is nonsensical. There, it won on default at the pleading stage, so that

the court must enter judgement for plaintiff and take its allegations as true. *Id.* It is irrelevant here.

In *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 964 (9th Cir. 2016), defendant sold Trader Joe's products in a store he called "Pirate Joe's" and also advertised Trader Joe's products on his website. *Trader Joe's Co. v. Desertcart Trading FZE*, No. 23-CV-01148-CRB, 2023 WL 3959376, at *1 (N.D. Cal. June 12, 2023), does not address the trademark allegations. The allegations there are that DesertCart sold Trader Joe's products. SER-33.

This Complaint was not Trader Joe's policing its trademark. It was to chill workers organizing for workplace fairness, and wholly without merit.

If this is the respect Trader Joe's showed the courts in bringing this meritless Complaint, and now appealing it at the Ninth Circuit Court of Appeals, it is not hard to recognize how poorly – and unlawfully - it treats its employees, powerless without the union, when they organize.

The District Court was right to deter this chilling lawsuit. It was right to award fees to Trader Joe's United for having to waste its time battling union busting dressed up as a meritless Complaint. We urge this Court to do the same.

# CONCLUSION

The District Court, "point[ing] out the obvious," held that the Company filed suit in "an attempt to weaponize the legal system to gain advantage in an ongoing labor dispute between Trader Joe's and the Union representing its workers." 1-ER-15. It was absolutely correct and eloquently explained. There was no plausible confusion and it was brought in bad faith to such a degree the District Court rightly awarded attorneys' fees.

For the foregoing reasons, the judgment of the District Court should be sustained and not disturbed.

Date: August 26, 2024

Respectfully submitted,

|  |  |
|---|---|
| _____/s/ Retu R. Singla_____ | ___/s/ Sonya Z. Mehta_____ |
| _____/s/ Seth Goldstein_____ | Sonya Z. Mehta |
| Retu R. Singla | |
| Seth Goldstein | SIEGEL, YEE, BRUNNER & MEHTA |
| Goldstein & Singla, PLLC. | 475 14th Street, Suite 500 |
| A Working People's Law Center | Oakland, California 94612 |
| 11 Broadway, Suite 605 | Tel: 510-839-1200 |
| New York, NY 10004 | Fax: 510-444-6698 |
| (646) 228-4729 | sonyamehta@siegelyee.com |
| rsingla@workingpeopleslaw.com | |
| sgoldstein@workingpeopleslaw.com | |

*Attorneys for Appellees Trader Joe's United*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s)** No. 24-720, 24 2826

The undersigned attorney or self-represented party states the following:

[x] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** ___/s/*Sonya Mehta*_____
**Date** __08/26/24_____

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** No. 24-720, 24 2826

I am the attorney or self-represented party.

**This brief contains** __10770__ **words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
[ ] it is a joint brief submitted by separately represented parties;
[ ] a party or parties are filing a single brief in response to multiple briefs; or
[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** ___/s/*Sonya Mehta*_____
**Date** __08/26/24_____