**Nos. 24-720, 24-2826**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

—————————————————————————

**TRADER JOE'S COMPANY,**

*Plaintiff-Appellant,*

v.

**TRADER JOE'S UNITED,**

*Defendant-Appellee.*

—————————————————————————

On Appeals from the United States District Court
for the Central District of California, Case No. 2:23-cv-05664
The Honorable Hernán D. Vera

—————————————————————————

**CONSOLIDATED REPLY BRIEF OF
PLAINTIFF-APPELLANT TRADER JOE'S COMPANY**

—————————————————————————

Jessica Stebbins Bina
Laura R. Washington
LATHAM & WATKINS LLP
10250 Constellation Boulevard
Suite 1100
Los Angeles, CA 90067
(424) 653-5500
jessica.stebbinsbina@lw.com
laura.washington@lw.com

Jennifer L. Barry
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400
jennifer.barry@lw.com

Melissa Arbus Sherry
LATHAM & WATKINS, LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
melissa.sherry@lw.com

October 16, 2024

*Counsel for Plaintiff-Appellant Trader Joe's Company*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION .............................................................................1

ARGUMENT ....................................................................................2

I.    Trader Joe's Adequately Pleaded A Claim For Trademark Infringement ...................................................................................2

    A.    Three Fundamental Errors Permeate The *Sleekcraft* Analysis .............3

    B.    Trader Joe's United's Analysis Of *Sleekcraft* Factors 2, 3, 5 And 6 Is Fatally Flawed .................................................................8

    C.    The Other *Sleekcraft* Factors Either Favor Trader Joe's Or Are Neutral ...................................................................................16

II.    Trader Joe's Adequatedly Pleaded A Claim For Trademark Dilution..........17

III.    Leave To Amend Should Have Been Granted ..............................................20

IV.    The Norris-LaGuardia Act Does Not Require Dismissal Of The Request For Injunctive Relief.........................................................22

    A.    This Case Does Not Involve Or Grow Out Of A Labor Dispute........23

    B.    This Case Is Not Governed By Section 104(e) ..................................25

    C.    No Court Has Held That The NLGA Applies To A Union's Sale Of Branded Goods In Commerce........................................................27

V.    The Fees Award Was Error ..........................................................................28

CONCLUSION .................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adidas America, Inc. v. Skechers USA, Inc.*,
  890 F.3d 747 (9th Cir. 2018) ...............................................................25

*Ariix, LLC v. NutriSearch Corp.*,
  985 F.3d 1107 (9th Cir. 2021) .............................................................22

*Balistreri v. Pacifica Police Department*,
  901 F.2d 696 (9th Cir. 1988) ..............................................................21

*Bliss Collection, LLC v. Latham Cos.*,
  82 F.4th 499 (6th Cir. 2023) .........................................................12, 16

*Davis v. American Broadcasting Co.*,
  No. 22-cv-5944, 2024 WL 1178014 (S.D.N.Y. Mar. 19, 2024) ......................26

*Doe v. Regents of University of California*,
  23 F.4th 930 (9th Cir. 2022) ...............................................................24

*Fortune Dynamic, Inc. v. Victoria's Secret Stores
  Brand Management, Inc.*,
  618 F.3d 1025 (9th Cir. 2010) ...........................................................8, 9

*IV Solutions, Inc. v. Empire HealthChoice Assurance, Inc.*,
  800 F. App'x 499 (9th Cir. 2020) .........................................................22

*Jack Daniel's Properties, Inc. v. VIP Products LLC*,
  599 U.S. 140 (2023) .......................................................................19, 20

*Jada Toys, Inc. v. Mattel, Inc.*,
  518 F.3d 628 (9th Cir 2008) ...............................................................18

*JL Beverage Co. v. Jim Beam Brands Co.*,
  828 F.3d 1098 (9th Cir. 2016) .............................................................12

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
  633 F.3d 1158 (9th Cir. 2011) .............................................................18

**Page(s)**

*Lucky Stores, Inc. v. International Brotherhood of Teamsters*,
   812 F. Supp. 162 (N.D. Cal. 1992) ....................................................27

*M2 Software, Inc. v. Madacy Entertainment*,
   421 F.3d 1073 (9th Cir. 2005) .........................................................15

*Marriott Corp. v. Great America Service Trades Council, AFL-CIO*,
   552 F.2d 176 (7th Cir. 1977) ...........................................................27

*New Kids on the Block v. News America Publishing, Inc.*,
   971 F.2d 302 (9th Cir. 1992) ...........................................................20

*New West Corp. v. NYM Co. of California, Inc.*,
   595 F.2d 1194 (9th Cir. 1979) .........................................................12

*Newcal Industries, Inc. v. Ikon Office Solutions*,
   513 F.3d 1038 (9th Cir. 2008) .........................................................14

*Official Airline Guides, Inc. v. Goss*,
   6 F.3d 1385 (9th Cir. 1993) ......................................................11, 15

*P&P Imports LLC v. Johnson Enterprises, LLC*,
   46 F.4th 953 (9th Cir. 2022) ...........................................................14

*Perfumebay.com Inc. v. eBay, Inc.*,
   506 F.3d 1165 (9th Cir. 2007) ...................................................13, 18

*Playboy Enterprises, Inc. v. Welles*,
   279 F.3d 796 (9th Cir. 2002) .....................................................17, 19

*Polanco v. Diaz*,
   76 F.4th 918 (9th Cir. 2023),
   *cert. denied*, 144 S. Ct. 2519 (2024)..............................................24

*Pom Wonderful LLC v. Hubbard*,
   775 F.3d 1118 (9th Cir. 2014) .........................................................12

*ProFitness Physical Therapy Center v. Pro-Fit Orthopedic
   & Sports Physical Therapy P.C.*,
   314 F.3d 62 (2d Cir. 2002) ................................................................6

**Page(s)**

*Radiance Foundation, Inc. v. NAACP*,
786 F.3d 316 (4th Cir. 2015) ................................................................20

*Rearden LLC v. Rearden Commerce, Inc.*,
683 F.3d 1190 (9th Cir. 2012) .............................................................11

*Robinson v. Hunger Free America, Inc.*,
No. 18-cv-00042, 2018 WL 1305722 (E.D. Cal. Mar. 13, 2018) .........2

*Senco Products, Inc. v. International Union Electrical, Radio &
Machine Workers, AFL-CIO-CLC*,
311 F. Supp. 590 (S.D. Ohio 1970) .....................................................26

*Silgan Containers LLC v. International Association of Machinists
& Aerospace Workers, AFL-CIO*,
No. 18-C-213, 2018 WL 5840766 (E.D. Wis. Nov. 8, 2018) ..............27

*Think Rubix, LLC v. Be Woke. Vote*,
No. 21-cv-00559, 2022 WL 1750969 (E.D. Cal. May 31, 2022).........26

*Tokyo Broadcasting System v. American Broadcasting Cos.*,
No. 08-cv-06550, 2009 WL 10668456 (C.D. Cal. Aug. 12, 2009)......13

*Trader Joe's Co. v. Hallatt*,
835 F.3d 960 (9th Cir. 2016) ...............................................................24

*United States v. Able Time, Inc.*,
545 F.3d 824 (9th Cir. 2008) .................................................................6

*Zepeda v. United States Immigration & Naturalization Service*,
753 F.2d 719 (9th Cir. 1983) ...............................................................22

**STATUTES**

15 U.S.C. § 1117(a) ..................................................................................28

15 U.S.C. § 1127........................................................................................20

29 U.S.C. § 104(e) ....................................................................................25

iv

## INTRODUCTION

Trader Joe's United asks this Court to abrogate the Lanham Act's protections for a single category of defendants: labor unions. Nothing in the Lanham Act, the Norris-LaGuardia Act (NLGA), the case law, or the alleged facts supports that result.

This case is not about the "weaponization" of trademark rights, AB1; it is about the weaponization of labor law. Trader Joe's United sells goods in commerce bearing Trader Joe's indisputably strong mark, in its traditional red color, in a font similar or identical to Trader Joe's. Such well-pleaded facts would easily survive a motion to dismiss in any other case. But the district court not only dismissed the claims in the original complaint, it denied leave to amend. As Trader Joe's explained, the court's reasoning is pervaded by legal errors.

Trader Joe's United doubles down on those same fatal flaws. On trademark infringement, it asks the Court to draw inferences in its favor about how consumers might interact with its website; to ignore its extensive use of Trader Joe's word mark; and to focus exclusively on a single tote bag. On trademark dilution, it repeats many of the same errors and barely defends the district court's sua sponte invocation of the inapplicable doctrine of nominative fair use. And it provides no good reason why Trader Joe's should have been deprived of even a single chance to amend.

Trader Joe's United's arguments regarding application of the NLGA go only to the possibility of injunctive relief and fare no better. No court has applied the

NLGA to the sale of branded goods in commerce and the statutory text makes clear it has no application here. This trademark case does not involve any labor dispute between the parties. Nor does the sale of the challenged products publicize any labor dispute. And Trader Joe's United cannot fall back on its assertion that its "goods were not infringing," AB21; the NLGA injunctive relief inquiry assumes they were.

The district court's award of attorneys' fees also cannot stand. The only thing exceptional about this case is its novelty: Trader Joe's United identifies no case holding that a union was free to sell branded goods bearing an employer's word mark.

The Court should reverse the district court's judgment granting the motion to dismiss and denying leave to amend, as well as the resulting fees award.

## ARGUMENT

## I.  TRADER JOE'S ADEQUATELY PLEADED A CLAIM FOR TRADEMARK INFRINGEMENT

As Trader Joe's explained in its opening brief, trademark infringement claims are rarely dismissed for failing to plead likelihood of confusion—let alone without leave to amend—because likelihood of confusion is usually a fact-intensive inquiry. OB31-33. In response, Trader Joe's United cites only a single unpublished district court decision dismissing a pro se complaint *with* leave to amend, on demonstrably dissimilar facts. AB24 (citing *Robinson v. Hunger Free Am., Inc.*, No. 18-cv-00042, 2018 WL 1305722 (E.D. Cal. Mar. 13, 2018)). And it argues dismissal was proper by focusing myopically on a single tote bag and the labor context. AB23-24. But

this case is not about a single tote design and there is no labor exception to the Lanham Act. The threshold to justify the dismissal remains extraordinarily high. Through that lens, dismissal cannot stand.

Trader Joe's United defends the district court decision at every turn. It says the court was right to rely on its website and draw inferences about consumer perception based on the court's own review. It says the court properly disregarded its use of the TRADER JOE'S word mark on all its products. And it say the court properly considered only a single tote bag, rather than the full range of marks and products alleged by Trader Joe's. These fundamental errors (and several more) permeated the court's analysis of *Sleekcraft* factors 2, 3, 5, and 6—and Trader Joe's United's defense of the same. Viewing the allegations in the light most favorable to Trader Joe's, as required, reversal is warranted.

## A. Three Fundamental Errors Permeate The *Sleekcraft* Analysis

Before walking through each *Sleekcraft* factor, three fundamental errors stand out: (1) repeated reliance on unfavorable inferences drawn from the Trader Joe's United website, (2) complete disregard of the TRADER JOE'S word mark, and (3) singular focus on tote bags, tote bag enthusiasts, and a single tote bag design.

1. The district court relied on extra-record facts, drawn from the union's website, to defeat the possibility of consumer confusion at the pleading stage. OB33-35. Specifically, the court made findings on how consumers would interact

with the Trader Joe's United website and what they would take away from it—holding, *inter alia*, that users would "necessarily" see particular language and draw specific inferences from the ".org" extension and symbols like a raised fist holding a boxcutter on some merchandise. 1-ER-18, 20-22. This was error. OB33-35.

Trader Joe's United characterizes the district court's approach as permissible judicial notice. AB25-26. But the court did not stop at acknowledging the website's existence or references made on it; it drew inferences about how a consumer would navigate the website and perceive the displayed information. 1-ER-21-22. That is not routine judicial notice; it is impermissible factfinding.

Trader Joe's United continues to push disputed facts in response, urging the Court to adopt its characterization of how customers would interact with its website. It concedes that, as the district court recognized, 1-ER-22, "a user could find themselves on the store page without navigating through the [union website's] homepage." AB26. That is no problem, Trader Joe's United argues, because the "store page" has an "About Us" link that would direct the user to the homepage; has an ".org extension"; and shows a "raised fist." *Id.* But to conclude that these reference points prevent customer confusion as a matter of law, several inferential steps are required. One, the customer would have to actually click on the "About Us" link that appears in small font, rather than just purchase the branded product. Two, the customer would have to both focus on the ".org" extension and draw certain

conclusions from that extension. And three, the customer would have to equate a "raised fist" (with a boxcutter) with labor activism—hardly common knowledge. When and how potential customers access the Trader Joe's United website, what pages of the website they see prior to purchase, and how they interpret images they may encounter, are questions of fact that cannot be resolved on the pleadings. As detailed below, impermissible reliance on these extra-record, disputed facts caused the court to misapply the critical *Sleekcraft* factors.

2.    The district court disregarded Trader Joe's word mark because it (wrongly) determined that Trader Joe's had abandoned any reliance on that mark by not challenging the union's use of Trader Joe's name in every context. Trader Joe's United again doubles down on the district court's error, urging that its use of Trader Joe's name is "uncontested." AB10. It goes so far as to suggest the union somehow "did not use" any of Trader Joe's marks when it emblazoned multiple products with the words "TRADER JOE'S." AB13, 27, 41.

But while it is true that Trader Joe's does not challenge the union's use of the name "Trader Joe's United" *to identify it as a union*, that does not mean Trader Joe's abandoned its word mark. As both parties explained, the union is likely permitted to use the name "Trader Joe's" to identify itself to its constituents as a matter of labor law. OB40-41; *see* 2-ER-209 (¶ 36). That is why Trader Joe's has never challenged the use of "TRADER JOE'S" in the Trader Joe's United union name or its

5

organizing activities—for more than two years (and counting) since Trader Joe's United came into existence. But that does not mean the district court could disregard the union's use of the TRADER JOE'S word mark entirely.

Trademark law examines each use, and Trader Joe's never licensed Trader Joe's United to use Trader Joe's valuable commercial trademarks "to advertise and sell merchandise." 2-ER-199 (¶ 5). And because trademark rights "do not exist in the abstract," *United States v. Able Time, Inc.*, 545 F.3d 824, 835 (9th Cir. 2008) (citation omitted), Trader Joe's decision not to object to the union's use of the TRADER JOE'S word mark in naming its union—a use not involving the sale of goods or services—does not waive its right to object to infringing uses. OB31-32; *cf. ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 69 (2d Cir. 2002) (even if some uses are permitted, "a defendant may [still] exceed the scope of the plaintiff's consent and be exposed to liability for that extra-consensual use").

And Trader Joe's *did* object to use of the word mark in the commercial context of the challenged products. It alleged that it had registrations for the "typed word mark TRADER JOE'S" and the "stylized word mark TRADER JOE'S"; that the union infringed by using both "the TRADER JOE'S typed word mark and stylized word mark"; and that the union's "infringing merchandise" includes several products "that wholly encompass the TRADER JOE'S word mark and stylized word mark."

6

2-ER-199, 204-205, 206-207 (¶¶ 5, 21, 28). And it specifically referenced these allegations in its opposition to the motion to dismiss. 2-ER-134. Trader Joe's United's use of the TRADER JOE'S word mark cannot simply be ignored.

3. As Trader Joe's explained, the district court's focus on tote bags alone was unduly narrow. OB36-37. Trader Joe's United embraces that narrow focus and takes it further—looking only to tote bag "enthusiasts" as the customer base and training its attention on a single tote bag design for its *Sleekcraft* analysis. *E.g.*, AB1, 8, 24, 27. At its most extreme, Trader Joe's United tells this Court it need only consider whether its tote bag "design [with] a fist" holding a boxcutter is similar to Trader Joe's tote bag design with "a fruit basket." AB32-33; *see also* AB27.

But the infringement claim Trader Joe's pleaded is far broader. Trader Joe's alleged that the sale of goods by Trader Joe's United infringes the "TRADER JOE'S Family of Marks," 2-ER-210-212 (¶¶ 38-52), which Trader Joe's uses "on a variety of products, including home goods," 2-ER-199, 202-205 (¶¶ 2, 18-19, 21), and which the union includes on "several product designs," 2-ER-206 (¶ 28). Trader Joe's attached to its complaint a suite of allegedly infringed trademark registrations spanning a wide range of products. 2-ER-219, 226-229, 233 (Ex. A (U.S. Reg. Nos. 1,424,176, 2,160,601, 2,156,879, 5,221,626)); *see* OB5, 38. Even for tote bags, Trader Joe's complaint identified not just one design, but multiple variations as "[e]xamples." 2-ER-202-203 (¶ 18). The likelihood of confusion from the tote bags

7

themselves is adequately pleaded. But considering only a single tote bag, with a single design, was error.

## B. Trader Joe's United's Analysis Of *Sleekcraft* Factors 2, 3, 5 And 6 Is Fatally Flawed

All three fundamental errors—(1) drawing overly generous, unreasonable factual inferences from the Trader Joe's United website, (2) limiting Trader Joe's famous marks to the non-word portion of the marks, and (3) focusing on a single tote bag—infected the district court's analysis of the *Sleekcraft* factors and Trader Joe's United's defense of the same. The errors had particular impact on *Sleekcraft* factors 2 (proximity), 3 (similarity), 5 (marketing channels), and 6 (customer care). Without those errors (and others), and applying the plausibility standard applicable on a motion to dismiss, it is clear all four favor Trader Joe's.

**Factor 2**. Proximity examines "whether the consuming public is likely somehow to associate" the parties' respective offerings. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1035 (9th Cir. 2010) (citation omitted). It does not require that the products be identical. OB36-38. And under the applicable proximity standard, Trader Joe's full range of products, including coffee, tea, cocoa, bags, and home goods, are relevant to whether the consuming public might also expect Trader Joe's United's mugs, bags, apparel, or buttons to have originated from Trader Joe's. *See* 2-ER-199 (¶ 2), 210 (¶ 40), 219-234.

Trader Joe's United's response, while a bit of a grab bag, includes all three errors discussed above.

*First*, Trader Joe's United claims relatedness can be measured only by looking at the parties' respective tote bags. AB29-30. That is wrong for all the reasons set forth above—including that Trader Joe's expressly pleaded that tote bags were simply one "among other products" that Trader Joe's United infringed, and that customers may well be confused about the origins of the tote bags, too. 2-ER-207-208 (¶ 29); *see also* 2-ER-205-208 (¶¶ 26-32); OB37-38. And when it comes to the numerous potential associations between the full range of goods—*e.g.*, coffee and tea with mugs, home goods with apparel, and decorative pins with buttons—Trader Joe's United says nothing substantive.

*Second*, Trader Joe's United repeats its overbroad assertion that "Trader Joe's does not dispute TJU's use of the name," and seeks to distinguish *Fortune* for this reason. AB29-30; *cf. OB37-38 (citing *Fortune*, 618 F.3d at 1035 (jury could find proximity factor favored plaintiff as between "women's shoes and apparel")). Trader Joe's *did* challenge the word mark in the context of specified branded goods sold in commerce; but more to the point, this argument says nothing about proximity.

*Third*, Trader Joe's United seeks to defend the district court's reliance on the website, 1-ER-18, and to align itself with cases where unions used marks to directly criticize an employer or promote union organizing efforts, by arguing that its goods

"inherently criticized" Trader Joe's. AB30-31. But any criticism comes from certain pages of Trader Joe's United's website, *not from the products themselves*. Indeed, most of the challenged designs contain no words other than "Trader Joe's United." *E.g.*, 2-ER-206-208 (¶¶ 28-29).[1] Relying on the website to provide criticism once again requires inferences against Trader Joe's. OB33. Trader Joe's United argues that customers would necessarily see pro-union language and products, including "an embedded video on the homepage featuring worker organizers," presumably prior to purchase. AB31. But the products and the cited language are not on all pages of its website, and the "embedded video" Trader Joe's United now invokes is nowhere to be found in the record. *Id.* And no authority or pleaded facts suggest that mere inclusion of the term "united" and a fist holding a boxcutter (an apparently unique symbol) would *necessarily* alert customers that the goods are not associated with Trader Joe's itself. To the contrary, case law suggests that a raised fist has a number of different associations. *See infra* at 26-27.

**Factor 3**. Trader Joe's United's arguments regarding the similarity factor repeat the same errors.

*First*, Trader Joe's United continues to ignore the word mark, resting entirely on the claimed waiver that does not exist for reasons explained above. *See supra* 5-

---

[1] A few include the word "union" or the phrase "a union lifts us all," but none include criticism. *See id.*

7. Consideration of the word mark is fatal to Trader Joe's United on the similarity factor. The mark appears on each of the challenged designs depicted in Trader Joe's complaint. 2-ER-206-207 (¶¶ 28-29). And had the district court properly considered its use, it would have had to conclude that similarity was sufficiently pleaded. *E.g.*, *Off. Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993) (marks likely to confuse where, *inter alia*, "both use[d] the phrase 'travel planner'"); *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1211-12 (9th Cir. 2012) (reasonable juror could find similarity given "apparent similarities between the names themselves" despite different logos).[2]

*Second*, Trader Joe's United not only focuses exclusively on tote bags (as did the district court)—but it narrows the lens even further to a single tote bag design. AB33. There is no justification in the record or the law for this cramped approach. And even on that one tote bag, Trader Joe's United misstates the record when it claims that Trader Joe's "conceded at oral argument" that Trader Joe's United's "red typeface is undisputedly unrelated in font." AB32. Trader Joe's counsel merely acknowledged the fonts were not *identical* on the one design the court was focused on, while noting the fonts *were* identical on other goods. 2-ER-107. Regardless,

---

[2] Trader Joe's United briefly suggests that its use of Trader Joe's word mark is "nominative." AB33. But that new argument was never made below and is now forfeited. And regardless, it is meritless for the reasons discussed *infra* and in the opening brief with respect to dilution. *See* OB48-50; *infra* 19-20.

fonts need not be identical to demonstrate similarity. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1128-29 (9th Cir. 2014) ("stylized second letter" supported similarity where "'o' in 'POM' is heart[-]shaped, and the 'o' in 'pom' has a breve over it"); *see also New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1202 (9th Cir. 1979) ("Strong marks are given 'strong' protection over a wide range of … variations on appearance of the mark.").

The district court should have considered the full use of Trader Joe's marks—*i.e.*, all fonts, colors, and use of the TRADER JOE'S word mark—and the full range of products. "[E]specially at the motion-to-dismiss stage," *Bliss Collection, LLC v. Latham Cos.*, 82 F.4th 499, 511-12 (6th Cir. 2023), where similarities "weigh more heavily than differences," *Pom*, 775 F.3d at 1127-28, there is no basis to conclude *as a matter of law* that a circular mark, in red font, stating "TRADER JOE'S UNITED" is not similar to a circular mark, in similar red font, stating "TRADER JOE'S." *See JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1109-10 (9th Cir. 2016) (party's "competing factual analysis" regarding "dramatic[] differen[ces]" in design did not "alleviate the existence of a dispute of material fact" regarding similarity).

**Factor 5**. Trader Joe's argued that the district court erred in assessing the use of similar marketing channels by failing to consider both initial and post-sale confusion and also by focusing exclusively on sale as opposed to marketing. OB41-

12

43. The union's response is hard to follow, but appears to hit on a few points—none of which remedy the district court's errors.

*First*, when it comes to the district court's limited focus on the point of sale, Trader Joe's United says nothing about post-sale confusion. As for initial interest confusion, it argues that Trader Joe's disclaimed that theory and that it does not apply in the absence of intentional deception. AB36. Neither is true. Trader Joe's did not disclaim any argument based on initial interest confusion, and the union's sole record cite does not show otherwise. *See* 2-ER-140. And initial interest confusion does not require an intent to deceive in this Circuit. *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1176 n.3 (9th Cir. 2007); *Tokyo Broad. Sys. v. Am. Broad. Cos.*, No. 08-cv-06550, 2009 WL 10668456, at *5 n.5 (C.D. Cal. Aug. 12, 2009).

*Second*, Trader Joe's United (again) rests on its website and argues labor symbolism necessarily precludes any confusion. AB33, 35. But that rests on the flawed premise that every single customer would necessarily see the "language of labor activism," AB35 (quoting 1-ER-20), prior to purchase—and it ignores post-sale confusion. As explained above, what "labor symbols" a potential customer would see, and what she may understand about those symbols, raise factual disputes that cannot be determined merely by reviewing the website. *See P&P Imports LLC*

13

*v. Johnson Enters., LLC*, 46 F.4th 953, 958 (9th Cir. 2022) (considering expert evidence on how customers might encounter products).

Take a hypothetical customer searching for a Trader Joe's-branded mug. The customer starts by googling "Trader Joe's mug," and finds a link to Trader Joe's United's website.[3] The customer clicks the link, bringing her directly to the union's "merch" page or subpages. *Cf.* 1-ER-22 (acknowledging users could "[find] themselves on [the] apparel page without navigating through the [union's] homepage"). In Trader Joe's United's telling, no customer would simply purchase the mug; every customer would instead find her way to the "language of labor activism" by clicking on multiple other links—or would inherently recognize the labor context based on the "united" name and raised fist. One cannot arrive at that conclusion while construing "all reasonable inferences" in Trader Joe's favor. *Newcal Indus., Inc. v. Ikon Off. Sols.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008).

*Third*, Trader Joe's United does not dispute that marketing (and not just sales) channels need to be considered. But like the district court, it gives internet advertising *no* weight. AB35. And while it asserts (without citation) that it is a

---

3   *See* 2-ER-137.  A search for "Trader Joe's mug" prominently features Trader Joe's United's mugs, with a link to the subpage, Trader Joe's United, Goods, https://store.traderjoesunited.org/goods/mugs/ (last visited Oct. 16, 2024).

"struggling union with one website," *id.*, this fact-based argument about the extent of its online advertising has no purchase on a motion to dismiss.

*Fourth*, and finally, Trader Joe's United defines the relevant customer base more narrowly than even the district court. In its view, "Trader Joe's tote bags 'enthusiasts'" do not overlap with "union supporters." AB35. But "tote bag[] enthusiasts" are not Trader Joe's sole customer base. Trader Joe's alleged that it offers a uniquely "neighborhood feel" in its stores that supply a wide "affordable product selection," drawing a wide range of customers. 2-ER-201-202 (¶¶ 14-16). Viewed in the light most favorable to Trader Joe's, there is obvious potential for overlap between Trader Joe's customers and the union's "merch" customers.

**Factor 6**. Trader Joe's United does not dispute that this case is not about the type of expensive or specialty goods that elicit a high degree of care. *E.g.*, *Off. Airline Guides, Inc.*, 6 F.3d at 1393 (display ads); *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1084 (9th Cir. 2005) (music management databases). It simply recycles the district court's subjective view that customers would necessarily review the union's website beyond its "merch" store pages before making a purchase. AB37. And it suggests that tote bag "enthusiasts" would exercise a higher degree of care. *Id.* Simply stating that both are "obvious[]," *id.*, does not make it so.

### C. The Other *Sleekcraft* Factors Either Favor Trader Joe's Or Are Neutral

The remaining *Sleekcraft* factors either favor Trader Joe's or are neutral:

**Factor 1**. As explained, Trader Joe's strong marks weigh heavily in Trader Joe's favor and should have been afforded greater weight throughout the district court's analysis. OB35. Trader Joe's United concedes that "Trader Joe's has a strong mark." AB27. And it does not dispute that strong marks are entitled to great weight; it just encourages the Court to focus on other factors, *id*., an argument which fails for reasons already discussed.

**Factor 4**. With respect to actual confusion, Trader Joe's explained that this factor should not weigh against it, because it is early in the case and the accused products were only available for a short time before suit. OB46; *see Bliss*, 82 F.4th at 512. Trader Joe's United offers only the ipse dixit assertion that "[n]o consumer would believe that TJU's tote came from Appellant." AB34. But even the district court found this factor neutral, 1-ER-22 n.11—and it is.

**Factor 7**. Because Trader Joe's was not required to allege intent to infringe at the pleadings stage, the question of intent should not weigh in either party's favor, as there is nothing to weigh. *Cf. Bliss*, 82 F.4th at 514 (factors are "neutral" where party "allege[d] no facts"). The district court agreed and this stands undisputed on appeal. 1-ER-22 n.11.

**Factor 8**. As to likelihood of expansion, Trader Joe's did allege that Trader Joe's United was likely to expand into other related goods, 2-ER-210-211 (¶ 41). Trader Joe's United's response—that there are no allegations it will expand "into groceries"—is a strawman. AB38. But in any case, the existing overlap in goods is sufficient. OB46.

\*    \*    \*

In the end, the district court's dismissal of the trademark infringement claim rested on drawing impermissible inference upon impermissible inference against Trader Joe's and should be reversed.

## II.    TRADER JOE'S ADEQUATEDLY PLEADED A CLAIM FOR TRADEMARK DILUTION

Trader Joe's also adequately pleaded a trademark dilution claim. As explained in the opening brief, the district court erred in applying a doctrine— nominative fair use—that was not raised and is not applicable. OB49-50. Trader Joe's United defends the district court's decision in two ways: (1) it argues the decision can be upheld on the ground that the marks are not identical or near-identical, AB40-41, and (2) it argues the district court was right to address nominative fair use, AB38-42. Neither argument has merit.

*First,* the dilution claim adequately pleads use of Trader Joe's marks or similar marks. Trader Joe's United argues that it does not actually use Trader Joe's marks, AB41, and that its marks are "not similar" to Trader Joe's marks, AB39-40. Both

17

assertions depend on the same mistaken argument asserted as to infringement; namely, that its use of the TRADER JOE'S word mark should be ignored. *See supra* at 5-7, 11. Trader Joe's is entitled to sue to prevent dilution of its mark through use on Trader Joe's United's products, notwithstanding the fact that it does not challenge Trader Joe's United's use of the Trader Joe's name to identify itself. *See Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 806 (9th Cir. 2002) (analyzing individual uses of mark, finding certain were "nominative" and thus could not dilute the mark, while others could).

Trader Joe's United also misstates the standard for pleading dilution, asserting that the marks must be "identical or nearly identical." AB39-40 (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008) and *Perfumebay.com Inc.*, 506 F.3d at 1180). But this Court has since explained that the "'identical or nearly identical' standard did not survive Congress's enactment of the [Trademark Dilution Revision Act of 2006]." *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1159 (9th Cir. 2011). Instead, "similarity is the necessary predicate for dilution analysis." *Id.* at 1173 n.12. Requiring near identicality would be "incorrect," *id.*, and provides no basis to affirm.

*Second*, the district court erred in sua sponte dismissing the trademark dilution claim on the ground that Trader Joe's United's use qualifies as nominative fair use.

18

Trader Joe's United argues the issue was properly before the district court, though it doesn't explain why the district court correctly dismissed on that ground. It did not.

Starting with the party presentation failure, Trader Joe's United says it *did* raise nominative fair use by arguing that its branded products sold in commerce were protected as "noncommercial speech." AB41. But that is a different argument: Trader Joe's United argued that it wasn't engaging in commerce, not that its commercial use was nominative. Trader Joe's United also argues that, even if not raised, the district court had to address nominative fair use as part of the court's duty to apply the correct legal standard. AB41-42. That is nonsense; the district court was not obligated to invoke a defense the union never raised. *Playboy*, 279 F.3d at 801 (explaining that the nominative use framework applies "[i]n cases in which the defendant raises a nominative use defense").

Preservation aside, Trader Joe's United does not defend the substance of the district court's decision. As it acknowledges, nominative use of a mark applies when a defendant uses a mark not to refer to the *defendant's* product, but to refer to the *plaintiff's* product, typically comparing or criticizing it. AB40-41. Nominative fair use does not apply when a defendant uses a mark *as a mark*. *See Playboy*, 279 F.3d at 805; *cf. Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 163 (2023). And for all the reasons Trader Joe's already explained, Trader Joe's United does exactly that: it uses marks to identify *its* products—not Trader Joe's products.

OB49-50; *see* 2-ER-206-207 (¶¶ 28-29). Trader Joe's United's marks, affixed to goods, function as trademarks: they "distinguish" Trader Joe's United's apparel, tote bags, mugs, and buttons "from ones 'manufactured or sold by others.'" *Jack Daniel's*, 599 U.S. at 156-57 (quoting 15 U.S.C. § 1127). This is a classic trademark use and is not "nominative." *See New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 307-08 (9th Cir. 1992) (nominative use cases "are best understood as involving a non-trademark use of a mark").

The closest Trader Joe's United gets is to note that "nominative use to comment on the trademark owner is protected as noncommercial use." AB41. But its cited case involved an *article* "that criticized the NAACP's stance on abortion." *Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 319 (4th Cir. 2015). That use was nominative because it identified the NAACP as the organization the article sought to criticize. *Id.* at 328, 331. That is a far cry from the union's use of the TRADER JOE'S mark, or the similar "Trader Joe's United" mark, on the challenged branded goods, which do not compare or criticize anything. *See supra* at 9-10.

## III. LEAVE TO AMEND SHOULD HAVE BEEN GRANTED

Trader Joe's United repeatedly argues that dismissal was proper because Trader Joe's purportedly failed to plead various facts. *E.g.*, AB29, 30, 33, 36, 38, 41. But it fails to squarely address the obvious response to those arguments: the district court should have granted leave to amend to address any pleading

deficiencies. *See* OB50-52. This is not the rare case where dismissal with prejudice is appropriate on a *first* complaint—and the court's denial of leave to amend either on grounds of futility or without any explanation is subject to de novo review. OB51.

Trader Joe's United suggests Trader Joe's was required to move for reconsideration of the dismissal order. AB44. That is specious. Trader Joe's requested leave to amend in opposing the motion to dismiss. 2-ER-147. Nothing more was needed to preserve its appellate rights. *E.g.*, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 700-02 (9th Cir. 1988) (reversing dismissal with prejudice where plaintiff requested leave to amend in opposition to motion to dismiss).

Trader Joe's United also takes aim at Trader Joe's examples of the many different ways it could have amended the complaint to address any perceived factual gaps. AB43-44; *see* OB52. But contrary to Trader Joe's United's assertion, AB43, Trader Joe's never "disclaimed" reliance on other products. Trader Joe's United points only to counsel's acknowledgment, in response to a direct question, that Trader Joe's does not *presently* sell mugs or buttons to customers. *Id.* That does not disclaim anything about the other products discussed (*e.g.*, shirts, mug-shaped cookies, spoons, coffee, tea). Nor does it contradict Trader Joe's statements, in opposition to the union's motion for attorneys' fees, that it creates and gives away promotional pins. OB52; 2-ER-51-64. As for the customer experience, Trader Joe's United just insists (again) that only its perspective matters. AB44. If anything, its

picking apart of the potential new factual allegations only shows why dismissal was improper. There was no basis for the district court to deny Trader Joe's "even one chance to amend its complaint." *IV Sols., Inc. v. Empire HealthChoice Assurance, Inc.*, 800 F. App'x 499, 501 (9th Cir. 2020).

## IV. THE NORRIS-LAGUARDIA ACT DOES NOT REQUIRE DISMISSAL OF THE REQUEST FOR INJUNCTIVE RELIEF

The district court also erred in dismissing Trader Joe's request for injunctive relief under the NLGA for two reasons: (1) this lawsuit does not involve or grow out of a labor dispute under Section 101, and (2) even if it did, it does not involve one of the enumerated acts for which injunctive relief is categorically barred under Section 104. OB24-30 Trader Joe's United's response fails at the threshold, and every step thereafter.

Trader Joe's United begins by misstating the standard of review. Although "denial of an injunction" is reviewed for abuse of discretion (AB13), Trader Joe's never moved for an injunction, so the district court did not deny one. The court simply dismissed the request for injunctive relief. That decision is reviewed de novo. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021); *cf. Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 724 (9th Cir. 1983) (applying the "incorrect substantive law" is an abuse of discretion).

Trader Joe's United also repeatedly falls back on the district court's dismissal of the trademark claims, insisting that "the goods were not infringing." *E.g.*, AB13-

15, 21, 22. That is circular. If the Court agrees the trademark claims should not have been dismissed, then the only question is whether injunctive relief is available for those properly pleaded claims. And if the Court disagrees, then the NLGA arguments are irrelevant because there would be no Lanham Act violation to enjoin.

That leaves Trader Joe's United with three arguments: (A) this case involves a labor dispute based on a combination of contemporaneous NLRB disputes and union organizing activities and a perceived lack of harm to Trader Joe's; (B) the challenged products publicized labor disputes under Section 104(e); and (C) the case law supports the union more than it supports Trader Joe's. None withstand scrutiny.

## A. This Case Does Not Involve Or Grow Out Of A Labor Dispute

Trader Joe's United appears to agree that a lawsuit only involves or grows out of a labor dispute when the "matrix" of the case is the "employer-employee relationship." AB18. That standard has been satisfied, it argues, because it "is organizing Trader Joe's employees and attempting to bargain with Trader Joe's." *Id.* But the existence of separate labor disputes between the parties does not render *this* lawsuit a labor dispute. OB25-26.

When it comes to articulating how this trademark case involves the employer-employee relationship, Trader Joe's United falls back on timing—namely, that the lawsuit was filed during the course of what it describes as a two-year "anti-union"

campaign. AB20.[4] But Trader Joe's did not sue at any time in the prior two years when Trader Joe's United (i) organized, (ii) named itself, (iii) launched its website, or (iv) filed multiple NLRB complaints. OB55-56. It sued only after—and immediately after—Trader Joe's United began selling merchandise. OB7-8. And its suit was limited to challenging specific goods offered for sale.

Nor can the asserted lack of harm to Trader Joe's turn this trademark case into a labor dispute. 1-ER-14; AB21. Trader Joe's United claims that Trader Joe's allegations of harm were "conclusory," drawing on the district court's extra-record factual finding that the "impact" of Trader Joe's United's sales "is undoubtedly de minimis" and thus the lawsuit must have been motivated by animus. 1-ER-14. Not only is that inference contrary to the complaint, 2-ER-208-209, 210-211 (¶¶ 33, 41), it is contrary to trademark law. Trademark law requires companies to actively protect their marks or see them weakened, *see* OB56, and allows recovery for the full scope of trademark harms, including reputational harm, loss of control over the image, and other intangible injuries. *E.g.*, *Trader Joe's Co. v. Hallatt*, 835 F.3d 960,

---

[4] Trader Joe's vigorously disputes the union's characterization of these activities. But for current purposes, the critical point is the district court did not rely on them either. The court relied only on the NLRB complaints' existence, without "tak[ing] the allegations within the complaints as true." 1-ER-15 n.5. It would have been improper for the court to do otherwise. *See Doe v. Regents of Univ. of Cal.*, 23 F.4th 930, 941 n.15 (9th Cir. 2022) (denying request to "take judicial notice of disputed facts contained in public records"); *Polanco v. Diaz*, 76 F.4th 918, 932 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2519 (2024).

971 (9th Cir. 2016) (sale of overpriced goods could harm Trader Joe's reputation and diminish value of marks); *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756-67 (9th Cir. 2018) ("[L]oss of control over business reputation and damage to goodwill [can] constitute irreparable harm …." (citation omitted)).  The district court did not make (and could not, at the Rule 12 stage, have made) any findings regarding which harms were "de minimis."

Because the matrix of this trademark case does not involve the employer-employee relationship, it is not a "labor dispute" within the meaning of Section 101 and the NLGA provides no basis to dismiss the injunctive relief request.

### B.  This Case Is Not Governed By Section 104(e)

Trader Joe's United does not dispute that injunctive relief is categorically barred only if it involves one of the nine enumerated acts in Section 104.  OB28-30. Trader Joe's United attempts to shoehorn itself into this list by arguing that its goods somehow "'publicize[]' a labor dispute" under Section 104(e).  AB21.  They do not.

Trader Joe's United argues that the word "united" in its name, a raised fist holding a boxcutter in its logo, and the phrase "a union lifts us all" that appears on some products, necessarily and clearly publicize the existence of a labor dispute. AB21-22.  That is not accurate, as a matter of law or logic.  The use of these words, or even a general reference to a union, does not "[g]iv[e] publicity to the existence of … any labor *dispute*."  29 U.S.C. § 104(e) (emphasis added).  Trader Joe's

United's broad reading would expand the NLGA to bar injunctions in *any* case where a marked good referenced a union—essentially creating a permanent statutory license for unions to use employer marks to sell goods.

Unsurprisingly, Trader Joe's United cites no case for this proposition. The cases it does cite do not address unions or labor at all, and certainly do not hold that the mere presence of a raised fist (holding a boxcutter) necessarily "publicizes a labor dispute." One case *rejects* the idea that a raised fist indicates a single social movement, because "the gesture" can mean different things where it "appears in different contexts and is made by different types of characters." *Davis v. Am. Broad. Co.*, No. 22-cv-5944, 2024 WL 1178014, at *18 (S.D.N.Y. Mar. 19, 2024). And the other makes no claim regarding the meaning of the symbol. *Think Rubix, LLC v. Be Woke. Vote*, No. 21-cv-00559, 2022 WL 1750969, at *1 (E.D. Cal. May 31, 2022) (raised fist used in connection with "woke" voting).

The case law applying Section 104(e) involves "publicizing" a dispute as that term is ordinarily used—*i.e.*, giving publicity to a labor dispute. *See Senco Prods., Inc. v. Int'l Union Elec., Radio & Mach. Workers, AFL-CIO-CLC*, 311 F. Supp. 590, 591-92 (S.D. Ohio 1970) (use of employer name on handbills related to disputed union election). Put simply, selling branded goods that include a union logo does not itself publicize a labor dispute.

### C. No Court Has Held That The NLGA Applies To A Union's Sale Of Branded Goods In Commerce

The remainder of the answering brief is spent on cases already discussed (and distinguished) in the opening brief. AB16-17. The fact remains: none allow the continued sale of branded goods in commerce. And the cases that consider that fact pattern suggest a union's sale of goods is outside the NLGA's purview. *See* OB22.

Trader Joe's United's cited cases are readily distinguishable. *See* AB16-17. In *Silgan*, a union created designs using the employer's marks "for use on social media platforms, such as Facebook and Twitter" and used those marks to "organize Silgan employees to vote in favor of unionizing." *Silgan Containers LLC v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, No. 18-C-213, 2018 WL 5840766, at *1, *3 (E.D. Wis. Nov. 8, 2018). Because the mark was not used "as a source identifier for [the union's] services," the court held it did not infringe. *Id.* at *3. Similarly, in *Marriott Corp. v. Great America Service Trades Council, AFL-CIO*, the employer challenged "the [union's] use of the [employer's mark] in its name," and sued following an advertisement urging employees to authorize the union. 552 F.2d 176, 178, 180 (7th Cir. 1977). And *Lucky Stores, Inc. v. International Brotherhood of Teamsters* involved "printed materials" that were "distributed in California Lucky Stores' parking lots" to "advocate a boycott." 812 F. Supp. 162, 163 (N.D. Cal. 1992).

None of these cases involved anything like the branded t-shirts, mugs, and other goods for sale to the public at issue here. Trader Joe's United cannot explain why its merchandise sold for profit should be treated the same as flyers or collective-bargaining materials. And the fact that Trader Joe's United is *separately* attempting to bargain does not mean that every act it undertakes—including selling goods—is part of a labor dispute.

## V.  THE FEES AWARD WAS ERROR

For the reasons discussed above and in Trader Joe's opening brief, this Court should reverse the district court's merits decision in full—and so too, its resulting fees award. *See* OB52-53. But even if this Court affirms on the merits, this was not such an "exceptional" case that a fees award was appropriate. 15 U.S.C. § 1117(a).

As to whether this suit was meritless, Trader Joe's United amps up the rhetoric, but there is little new in terms of substance. These arguments fail for the reasons explained above and in Trader Joe's opening brief. *See supra* at 2-20; OB54-55.

As to whether the suit was brought in bad faith, Trader Joe's United does not dispute that parties are required to take action to defend their trademarks. OB56. It just says they only have to do so if they have a "reasonable belief" their mark was being infringed. AB47-48. Trader Joe's had just that: a reasonable belief that its mark was being used on commercial merchandise, likely to be confused with its own. And it filed this lawsuit only when Trader Joe's United decided to start selling

28

branded goods in commerce—roughly three weeks after Trader Joe's United launched a "merch" store. OB7. Nothing about that timing—or anything else in the record—supports bad faith.

## CONCLUSION

The district court's judgment should be reversed, the attorneys' fees award vacated, and the case remanded for further proceedings.

Dated:  October 16, 2024                Respectfully submitted,

                                        *s/ Jennifer L. Barry*

Jessica Stebbins Bina                   Jennifer L. Barry
Laura R. Washington                     LATHAM & WATKINS LLP
LATHAM & WATKINS LLP                    12670 High Bluff Drive
10250 Constellation Boulevard           San Diego, CA  92130
Suite 1100                              (858) 523-5400
Los Angeles, CA  90067                  jennifer.barry@lw.com
(424) 653-5500
jessica.stebbinsbina@lw.com
laura.washington@lw.com                 Melissa Arbus Sherry
                                        LATHAM & WATKINS, LLP
                                        555 Eleventh Street, NW
                                        Suite 1000
                                        Washington, DC  20004
                                        (202) 637-2200
                                        melissa.sherry@lw.com

*Counsel for Plaintiff-Appellant Trader Joe's Company*

29

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8.  Certificate of Compliance for Briefs

**9th Cir. Case Number(s)**  24-720, 24-2826

I am an attorney for Plaintiff-Appellant Trader Joe's Company.

This brief contains 6,974 words, including any words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f).

The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** *s/ Jennifer L. Barry*          **Date**  October 16, 2024